**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Melva Eileen LEASURE, Defendant–Appellant.**

No. 96–50131.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 8, 1997.

Decided Aug. 29, 1997.

Vincent J. Brunkow, San Diego, CA, for defendant-appellant.

David A. Katz, Assistant United States Attorney, San Diego, CA, for plaintiff-appellee.

Before: FLETCHER and PREGERSON, Circuit Judges, and WEXLER, District Judge.[*]

PER CURIAM:

## I. OVERVIEW

Leasure appeals her conviction and sentence after a jury trial. She was convicted of importation of 51.77 kilograms of marijuana in violation of 21 U.S.C. §§ 952 and 960, and possession of 51.77 kilograms of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and sentenced to 33 months. She appeals the denial of her suppression motion and the court's refusal to grant a downward adjustment of her sentence for acceptance of responsibility.

## II. FACTS

Leasure entered the United States from Mexico at the port of entry at San Ysidro, California, driving a 1980 Volkswagen van. A Customs Inspector, working in the pre-primary area of inspection, accompanied by a Canine Enforcement Officer, and a narcotics/contraband detector dog "Salem" noticed Leasure's van in line and approached it because it is an easy vehicle to inspect. The inspector shone his flashlight into the van, and looked at the floor area where he noticed a discrepancy in the height of the floor. Experience had taught him that this space was easily altered by smugglers in this type of van to form a compartment to conceal narcotics.

[*] Honorable Leonard D. Wexler, Senior United States District Judge for the Eastern District of New York, sitting by designation.

The inspector approached Leasure and asked her to turn off the motor and give him the keys, which is standard procedure, done for the inspectors' safety. He asked who owned the van, and Leasure replied that it was her vehicle which she had purchased two weeks earlier. She informed him that she had registered the vehicle the day before, produced a registration slip dated July 13, 1995, and indicated her address to be in San Bernardino, California. The inspector asked her the reason for her travel. She said she went to Mexico to buy a wedding dress, but the inspector did not see one in the van. He also asked if she had been with the van all day and she replied that she drove down earlier that day from her home and had been with the vehicle all day. He asked her why she had not bought a wedding dress, but she appeared distracted and did not respond.

At some point during this questioning, the Canine Enforcement Officer approached with Salem, and the dog alerted on Leasure's vehicle on the passenger side. As soon as the inspector was aware that Salem had alerted on the vehicle, he asked Leasure to get out of the vehicle. He then escorted Leasure to the secondary inspection area.

While Leasure was in the secondary inspection area, the van was searched, and marijuana was found in the concealed compartment in the floor. Agent Barnes, another inspector, advised Leasure that marijuana had been found in the van and she was placed under arrest and advised of her *Miranda* rights. Leasure indicated that she understood her rights and elected to answer questions without an attorney present.

Leasure told Barnes that she obtained the van from a man named "Lucky" whom she had known since December 1994. She had given him and members of his family haircuts, and he owed her $200. He offered her his van as collateral, and she agreed. "Lucky" wanted the van registered in her name, and she agreed. On July 13, Leasure told him that she wanted a stereo installed in the van, and he said he knew someone in Mexico that could get her a stereo very cheap. Contrary to her statements to the first inspector, Leasure told Barnes that "Lucky" took the van to Mexico on July 14, 1995 and called Leasure to tell her that the van was ready and she could come get it. Her daughter drove her down to the border, and she met "Lucky" at a taxi stand in Tijuana. "Lucky" took her shopping for a dress and then "Lucky" drove her to the van. She got lost for two hours and then returned home. Notably, there was no radio in the van on its return from Mexico.

Leasure filed objections to the presentence report with an attached letter to the judge stating among other things: "I am not asking that you consider me innocent nor that you drop the charges against me. I have done wrong, and I freely and willingly acknowledge my guilt. I have made mistakes." She then discussed her drug problem and requested leniency.

At the sentencing hearing, the court allowed Leasure to allocute after taking comments from the attorneys on the presentence report. When asked what she would like to say, she stated "I'm sorry. I really am. I know I've done wrong." After the attorneys' arguments, the judge explained that there would be no reduction in points for acceptance of responsibility, expressing concern that Leasure had not made a clear statement of her guilt. Defense counsel offered to have Leasure questioned by the court. However, the court stated "No, no, no, no. I'm—you know, on acceptance of responsibility, I'm not going to—I don't think it's appropriate at this point, after she's had a chance to talk at so many stages, for—and we're at the end of sentencing." The judge stated that further questioning of defendant was not necessary, and anything said would be too little, too late. The district court then sentenced Leasure to 33 months in custody.

## III. DISCUSSION

### A. *Suppression of statements made at preprimary inspection area.*

■ Leasure contends that the district court committed error when it denied defendant's motion to suppress her statements made to the first inspector while she was still in the van. The Government asserts that those statements were made prior to defendant being in custody, that no *Miranda*

warnings were required, and that the district court's denial of defendant's motion was proper. We review de novo. *United States v. Miller*, 812 F.2d 1206, 1208 (9th Cir.1987).

■ This court has on several occasions considered the problem of *Miranda* warnings in the context of border searches. *See United States v. Manasen*, 909 F.2d 1357, 1358 (9th Cir.1990); *United States v. Duncan*, 693 F.2d 971, 979 (9th Cir.1982); *United States v. Estrada–Lucas*, 651 F.2d 1261, 1265 (9th Cir. 1980). Those cases have all held that *Miranda* warnings need not be given in a border crossing situation unless, and until, the questioning agents have probable cause to believe that the person has committed an offense. The results of those cases remain good law but for reasons somewhat different than advanced in them. In *Stansbury v. California*, 511 U.S. 318, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994), the Court directs the reviewing court to look to the objective circumstances of the interrogation, not to the subjective view harbored by either the suspect or the interrogating officers to determine whether the defendant is in custody. *Id.* 511 U.S. at 324, 114 S.Ct. at 1529. Stops and routine questioning are the norm at the border in the primary inspection areas. In most cases, the earliest that a person could be in custody is at the point when she is moved into a secondary inspection area and asked to exit her vehicle while it is searched.

Leasure's is a typical case. As is usual, officers roamed the pre-primary area questioning drivers. The first inspector approached Leasure and asked her several questions as to why she went to Mexico and what she had done there. It is immaterial whether his questioning at this stage continued after Salem had alerted on the vehicle or not. Objectively, there was nothing to suggest that Leasure was in custody before she was asked to step out of her vehicle.

### B. *Sentencing*

■ Leasure argues that the district court erred by denying her a full opportunity to state the reasons for her guilt in violation of Federal Rule of Criminal Procedure 32(c)(3) and her due process right to speak on her own behalf. Whether a defendant is denied a right of allocution is reviewed for harmless error. *United States v. Ortega–Lopez*, 988 F.2d 70, 72 (9th Cir.1993); *Boardman v. Estelle*, 957 F.2d 1523, 1530 (9th Cir.1992).

"Before imposing sentence, the court must . . . determine whether the defendant wishes to make a statement and to present any information in mitigation of the sentence." Fed.R.Crim.P. 32(c)(3). This court has held that Rule 32 may be satisfied by allowing a defendant an opportunity to make a statement before the end of sentencing but after the court has indicated its tentative conclusions on sentencing. *United States v. Laverne*, 963 F.2d 235, 237 (9th Cir.1992). Leasure attempts to turn this holding around and say that the court must accept additional statements once it has announced its intention on sentencing. While this court has held that the right to allocute at sentencing has the same quality as the right to put on a defense, *see Boardman*, 957 F.2d at 1528, it has never held that a defendant has a right to unlimited allocution.

In the case at hand, Leasure filed objections to the pre-sentence report with an attached letter to the judge stating among other things: "I am not asking that you consider me innocent nor that you drop the charges against me. I have done wrong, and I freely and willingly acknowledge my guilt. I have made mistakes." She then discussed her drug problem and requested leniency. The court allowed Leasure to speak after taking comments from the attorneys on the pre-sentence report. When asked what she would like to say, she stated, "I'm sorry. I really am. I know I've done wrong." After the attorneys gave arguments, the district court judge began to pronounce Leasure's sentence. In explaining there would be no reduction in points for acceptance of responsibility, the district court expressed concern that Leasure had not made a clear statement of her guilt. Defense counsel offered to have Leasure questioned by the court. However, the court states "No, no, no, no. I'm—you know, on acceptance of responsibility, I'm not going to—I don't think it's appropriate at this point, after she's had a chance to talk at

so many stages, for—and we're at the end of sentencing." The district court held that, after Leasure had ample opportunity to make a statement regarding her acceptance of responsibility, further questioning of defendant was not necessary and would be too little, too late. Based upon the clear and unrestricted opportunity the district court gave Leasure to make any statement she wished earlier in the sentencing hearing, Leasure was not denied her rights under due process or Rule 32 to make statements of allocution. Moreover, under a harmless error standard, Leasure has not identified any statements on appeal which she would have made at sentencing that would be likely to have changed the court's conclusion as to acceptance of responsibility.

## IV. CONCLUSION

The district court's ruling denying suppression of Leasure's pre-primary statements was proper because she was not in custody. Leasure was not denied her right to allocution at sentencing. Finally, we find Leasure's remaining contentions to be meritless. Accordingly, the district court's conviction and sentencing of appellant is AFFIRMED.