**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

PAUL SILVA,
            *Defendant-Appellant.*

No. 05-50871

D.C. No.
CR-02-01933-NAJ

OPINION

Appeal from the United States District Court
for the Southern District of California
Napoleon A. Jones, District Judge, Presiding

Argued and Submitted
September 15, 2006—Pasadena, California

Filed January 3, 2007

Before: J. Clifford Wallace, Diarmuid F. O'Scannlain, and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge O'Scannlain

## COUNSEL

Jason M. Goldberg, Assistant United States Attorney, Office of the United States Attorney, San Diego, California, argued the cause for the plaintiff-appellee and Carol C. Lam, United States Attorney and Roger W. Haines, Jr., Assistant United States Attorney were on the brief.

Steven F. Hubachek, Federal Defenders of San Diego, Inc., San Diego, California, argued the cause for the defendant-appellant and was on the brief.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether a defendant has a right to allocute during a limited remand to the district court from a sentencing appeal.

I

A jury in the Southern District of California convicted appellant Paul Silva of importation of marijuana and possession of marijuana with intent to distribute. The district judge held a sentencing hearing, in which he considered the Probation Officer's Report, Silva's Sentencing Memorandum and Departure Request, the Addendum to the Probation Officer's Report, and the Government's Sentencing Summary Chart. He expressly asked Silva whether he wished to comment; Silva declined to speak.

In determining Silva's sentence, the district judge applied the then-mandatory Federal Sentencing Guidelines. He declined to depart downward based on diminished capacity, after finding that Silva was voluntarily intoxicated and might endanger the public if released sooner. He calculated a criminal history score, but reduced it, after concluding that "the criminal history [wa]s overrepresented by one level."[1] Sentencing Silva to 77 months in prison and three years of supervised release, he recommended that Silva be housed near his relatives and enrolled in a drug treatment program.[2]

Silva appealed. We rejected his procedural and evidentiary claims, but granted a limited remand, as required by *United States v. Ameline*, 409 F.3d 1073, 1084-86 (9th Cir. 2005) (en banc), in order to "determine from the record whether the district court would have imposed a materially different sentence if it had known that the United States Sentencing Guidelines were advisory rather than mandatory, as the Supreme Court

---

[1]Reducing the criminal history score lowered the corresponding range of possible incarceration from 84-105 months to 77-96 months.

[2]Following imposition of the sentence and recommendations, Silva blurted out: "No, way, man. Wait, I want to say something, dude. The maximum is five years, man." However, no further comments by Silva were entered in the record, and Silva does not claim that he was denied a right to allocute during the original sentencing proceeding.

held in *Booker.*" *See United States v. Silva*, No. 03-50458, 2005 WL 1669569, at **1 (9th Cir. July 1, 2005).

Receiving the case on limited remand, the district court solicited submissions from counsel, as required under *Ameline. See* 409 F.3d at 1085. Silva's counsel sought a full sentencing hearing at which Silva could appear, but the district judge responded: "[A] full sentencing hearing . . . is not the mandate issued by the Ninth Circuit . . . [and] the defendant's presence is not warranted." The judge reaffirmed Silva's original sentence: "[H]aving reviewed the written comments of counsel and the factors pursuant to 3553(a), [the court] finds that the sentence imposed by this court *would not be different* under the advisory guidelines and, on that basis, *reaffirms the sentence previously imposed* by the court." (emphasis added). Silva timely appeals.

## II

Silva argues that he had a right to allocute during the limited remand proceeding. In support of this right, he cites our decision in *Ameline*, our due process jurisprudence, and Federal Rule of Criminal Procedure 32.

## A

In *Ameline*, our en banc court considered the need to correct unpreserved *Booker* error, and noted that "plain error analysis" can be particularly difficult in cases "where it is not possible to reliably determine from the record whether the sentence imposed would have been materially different had the district court known that the Guidelines were advisory." *Ameline*, 409 F.3d at 1084. In such cases, "we will remand to the sentencing court to answer that question." *Id.*[3]

---

[3]Four circuits have adopted this limited remand procedure to assess the possibility of *Booker* error. *See United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005); *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005); *United States v. Coles*, 403 F.3d 764 (D.C. Cir. 2005); and *Ameline*, 409 F.3d 1073.

**[1]** On remand, *Ameline* requires the district court to make a subjective determination, based upon a review of the record and the submissions of counsel, as to whether the sentence would have been materially different under advisory Guidelines. The materials relevant to the inquiry mirror those considered by an appellate court during plain error analysis:

> In answering the question we pose, the district court need not determine or express what the sentence would have been in an advisory system. It is enough that the sentence would have been materially different. We agree with the Second Circuit that the "views of counsel, at least in writing," should be obtained.

*Ameline*, 409 F.3d at 1085 (citing *Crosby*, 397 F.3d at 120). We circumscribed not only the relevant materials but the effect of the remand inquiry. *Id.* If the district judge decides that she would have chosen the same sentence, no plain error occurred, and the *original* sentence stands. *Id.* However, if the judge would have selected a different sentence, her pre-*Booker* reliance on the mandatory Guidelines constitutes reversible error, and resentencing must follow. *Id.*

**[2]** Importantly, *Ameline* allows a district judge to proceed directly from error analysis to resentencing, without any appellate involvement. *See id.* at 1080 (adopting the "less cumbersome" approach of the Second Circuit, so that "if a district court judge determines that resentencing is warranted after remand from the court of appeals, he or she can *simply vacate the sentence and resentence*" (emphasis added)); *see also id.* at 1089 (Wardlaw, J., dissenting) (objecting that this procedure delegates an appellate function to the district courts). Despite *Ameline*'s fluid transition from error analysis to resentencing, the phases are distinct. *See id.* at 1085. Most importantly, the separate event of a resentencing entails a far more extensive proceeding and is necessary only if the initial inquiry reveals sentencing error:

In such a case, the original sentence will be vacated and the district court will resentence with the defendant present. In resentencing the defendant, the district court is permitted to take a fresh look at the relevant facts and the Guidelines consistent with *Booker,* the Sentencing Reform Act of 1984, Rule 32 of the Federal Rules of Criminal Procedure, and this opinion.

*Id.* (citations omitted). Thus, we distinguished full resentencing from the streamlined initial inquiry established by the Second Circuit, in which the district court " 'need not' require the presence of the Defendant." *Crosby*, 397 F.3d at 120 (citation omitted); *see also United States v. Jasper*, 2005 WL 774519, at *1 (S.D.N.Y. Apr. 6, 2005) (noting that *Crosby* does not require a defendant to be present during the initial inquiry).

[3] In Silva's case, the district judge properly followed the *Ameline* procedure: He evaluated the record, considered the views of counsel, and concluded that he would have chosen the same sentence under a discretionary regime. *Ameline* provides no right for a defendant even to be present during such a limited inquiry, and so by necessary implication does not support a right to allocute therein.[4]

---

[4]Although *Ameline* delineates the procedure to be followed on limited remand, Silva contends that the remand should be compared to the non-traditional sentencing proceedings in *United States v. Behrens*, 375 U.S. 162 (1963), at which a defendant has a right to allocute. In *Behrens*, the Court held that a defendant may speak in a hearing to determine whether results of a study would lead the court to modify a previously *tentative* sentence. *Id.* at 164-66. The function of an *Ameline* remand does not mirror the sentencing purpose in *Behrens*. An *Ameline* remand allows a court to ascertain whether plain error occurred in an original sentence intended to be final, and does not require new evidence or resentencing, unless such error is found.

## B

Silva then asks us to add a gloss to *Ameline*. In particular, he argues that our *Ameline* decision should not be read to accept fully the Second Circuit's *Crosby* approach, which he claims lacks a legal basis. Yet our court has repeatedly espoused the *Crosby* method. *See Ameline*, 409 F.3d at 1082 ("[T]he limited remand procedure set forth in *Crosby* best resolves this unique issue that has arisen in the wake of the Supreme Court's holding in *Booker*."); *United States v. Montgomery*, 462 F.3d 1067, 1069-70 (9th Cir. 2006) (restating explicitly what *Ameline* requires through references to *Crosby*).

Although we have never specifically addressed the right of allocution during an *Ameline* remand, we clarified the requisite procedures. In *Montgomery*, we declared: "Read in context, *Ameline* requires, at a minimum, that the district court obtain, or at least call for, the views of counsel in writing before deciding whether re-sentencing is necessary." 462 F.3d at 1070. There, we declined to complicate the *Ameline* inquiry by turning it into a full-fledged sentencing proceeding, in which a right to allocute would be essential.

## III

**[4]** Finding no support in *Ameline* for Silva's right to allocute, we turn to Silva's due process argument. We have previously stated: "In the context of criminal law, the backbone of [our] democratic faith is the right of a criminal defendant to defend himself against his accusers; and it has long been recognized that allocution, the right of the defendant to personally address the court, is an essential element of a criminal defense." *Boardman v. Estelle*, 957 F.2d 1523, 1526 (9th Cir. 1992) (footnote omitted). The purpose of the right of allocution is to allow a defendant to "bring mitigating circumstances to the attention of the court." *Sherman v. United States*, 383 F.2d 837, 839 (9th Cir. 1967). Due process requires that a

defendant who seeks to speak must be given such an opportunity before a sentence is imposed. *See Boardman*, 957 F.2d at 1524.

**[5]** While these cases clearly place the right of allocution on a strong constitutional foundation, they do not clarify whether such right exists during an *Ameline* remand proceeding. Of course, due process does not mandate an opportunity to speak at every judicial proceeding that may affect a conviction or sentence. In *United States v. Veatch*, 674 F.2d 1217 (9th Cir. 1981), we discerned no due process violation where the defendant was not allowed to be present at a pretrial conference. *Id.* at 1225. In *Stein v. United States*, 313 F.2d 518 (9th Cir. 1962), *cert. denied*, 373 U.S. 918 (1963), we affirmed the district court's denial of the defendant's motion attacking the sentence, although the trial judge denied the motion without a hearing. *Id.* at 522. In *Olney v. United States*, 433 F.2d 161 (9th Cir. 1970), we concluded that the defendant had no right to be present at a pretrial conference, although we stopped short of suggesting "that there is no right whatever to be present at hearings on pre- and/or post-trial motions." *Id.* at 163.

**[6]** Moreover, we have decided that allocution is not always necessary in the case of sentencing error. In *United States v. Knows His Gun*, 438 F.3d 913 (9th Cir. 2006), we considered whether "a remand is appropriate so that [a defendant] can 'exercise his right to allocution unencumbered by the mandatory nature of the Guidelines' and also introduce evidence of other factors, such as 'background, character and conduct,' which were not relevant under a mandatory Guidelines regime." *Id.* at 919-20. At Knows His Gun's original sentencing, the district court judge anticipated the possibility that the Guidelines might later be found unconstitutional. *Id*. He considered evidence regarding non-Guidelines factors, gave the defendant an opportunity to speak, and chose an "alternate sentence" unconstrained by the Guidelines. *Id.* (weighing all § 3553 factors, but reaching an identical sentence). We

affirmed, concluding that an *Ameline* remand was unnecessary, because the defendant had already had a chance to present non-Guidelines evidence at the original sentencing and needed no further right to allocute.[5] *Id.*

**[7]** Applying this reasoning to the *Ameline* remand context, we conclude that a defendant does not have a right to allocute. Due process requires a defendant to have an opportunity to "bring mitigating circumstances to the attention of the court," *Sherman*, 383 F.2d at 839, only when a new sentence is to be imposed.[6] Because an *Ameline* remand merely requires review of the record and the views of counsel, due process does not require allocution.

IV

**[8]** Last, we address Silva's argument that Fed. R. Crim. P. 32 mandates allocution during an *Ameline* remand. We acknowledge that the Federal Rules of Criminal Procedure may create rights that are not guaranteed by the Constitution.

---

[5]In *United States v. Leasure*, 122 F.3d 837, 840 (9th Cir. 1997), we noted that even during an original sentencing hearing, the right to allocute is not absolute: Once a defendant has had a "clear and unrestricted opportunity . . . to make any statement," the defendant may be denied a later opportunity to speak, without any violation of "her rights under due process or Rule 32." *Id.* at 841.

[6]Despite the circumscribed scope of an *Ameline* remand, Silva argues that such a remand necessarily involves the consideration of new evidence, because a district judge no longer must confine his analysis to the Guidelines factors. Silva correctly points out that a judge may give significant weight to "[m]ental and emotional conditions," which are "not ordinarily relevant in determining whether a departure is warranted." U.S.S.G. § 5H1.3 (2004). However, the Guidelines, even when mandatory, did not preclude consideration of such factors. Indeed, Silva was allowed to present extensive and expert testimony regarding his mental and emotional problems. That evidence became part of the record, which the district judge considered on remand. Under *Ameline*, we do not second-guess the district court's subjective determination that these factors would not have changed his sentencing decision.

Here, we inquire whether an opportunity to allocute during an *Ameline* remand, though not mandated by the Constitution, is required as a statutory matter. Fed. R. Crim. P. 32 specifies that *before* sentencing, a "court must . . . address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(4)(a)(ii). In *Boardman*, we noted that this rule applies in some situations where the Constitution would not require allocution. *See* 957 F.2d at 1526 ("[The] sentencing judge's failure to ask a defendant if he had anything to say, *although a violation of Fed. R. Crim. P. 32(a)(1)(C)*, was not an error of Constitutional dimension . . . ." (citing *Hill v. United States*, 368 U.S. 424 (1962)) (emphasis added) (footnote omitted)).[7]

We have not confined the application of Fed. R. Crim. P. 32 to the context of original sentencing. In *United States v. Carper*, 24 F.3d 1157 (9th Cir. 1994), we determined that the rule provides a right to allocute before revocation of parole, because "although the defendant may have had the opportunity to speak at the original sentencing hearing, the conduct giving rise to the new sentence is different." *Id.* at 1161-62.

Silva contends that our decision in *United States v. Gunning*, 401 F.3d 1145 (9th Cir. 2005), interprets Fed. R. Crim. P. 32 to require allocution upon limited remand. In *Gunning*, we remanded a case to the district court for the limited purpose of recording whether the court had considered a minor role adjustment at original sentencing. *Id.* at 1147-48. If the district court found that it had not, it was to resentence in light of the evidence for and against a minor role adjustment. *Id.*

---

[7]The *Hill* Court referenced Fed. R. Crim. P. 32(a)(1)(C), which applies to offenses committed prior to November 1, 1987. This rule, like Fed. R. Crim. P. 32(i)(4)(A)(ii), requires a sentencing court to "address the defendant personally and ask the defendant if the defendant wishes to make a statement in the defendant's own behalf and to present any information in mitigation of punishment." Fed. R. Crim. P. 32(a)(1)(C).

at 1148. The district court then held a hearing regarding the adjustment, viewed evidence it had not already considered, and decided to reimpose the same sentence. *Id.* During this proceeding, the judge neglected his duties under Fed. R. Crim. P. 32 to "afford the defendant an opportunity to present all available accurate information bearing on mitigation of punishment" and "then listen and give careful and serious consideration to such information." *Id.* at 1147 (internal quotation marks and citations omitted). We vacated and remanded, concluding that "the district court overlooked according Gunning his right of allocution at resentencing." *Id.* at 1149 n.6; *see also id.* at 1150 ("We are not able to say that the district court could not have lowered Gunning's sentence had he been given an opportunity to speak.").

*Gunning* does not govern Silva's appeal, because Silva received an opportunity to speak before sentencing (although he refused). The district judge never resentenced him, and never held a hearing to consider evidence that had not been presented at the original sentencing. Therefore, *Gunning* is inapposite.

**[9]** *Ogden v. United States*, 323 F.2d 818 (9th Cir. 1963), provides a better analogy to the limited inquiry made in Silva's case. In *Ogden*, we held that the defendant had no right of allocution during a limited remand intended "solely for the purpose of permitting the trial court to supplement the record to enable it to determine whether prejudicial error had occurred. The conviction was to be set aside and a new trial ordered only if the trial court concluded that such error had occurred." *Id.* at 822. The narrow purpose of the remand in *Ogden* is similar to the constrained nature of an *Ameline* remand. As in *Ogden*, we discern no right of allocution during so limited an inquiry.

V

**[10]** Our review of *Ameline*, our due process jurisprudence, and Fed. R. Crim. P. 32 reveal no constitutional or statutory

reason to require allocution during an *Ameline* remand. We emphasize that the *Ameline* procedure is limited, and that "[w]hile this court has held that the right to allocute at sentencing has the same quality as the right to put on a defense . . . it has never held that a defendant has a right to unlimited allocution." *Leasure*, 122 F.3d at 840. Denying allocution during a remand to discern sentencing error does not infringe on a defendant's constitutional rights, and our judicial role precludes us from engrafting new requirements into the Federal Rules of Criminal Procedure.

**AFFIRMED.**