# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

AGOSTO AYSON BIAGON,
            *Defendant-Appellant.*

No. 06-10479

D.C. No.
CR-05-00238-JSW

OPINION

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted
April 18, 2007—San Francisco, California

Filed December 17, 2007

Before: David R. Thompson, Andrew J. Kleinfeld, and
Sidney R. Thomas, Circuit Judges.

Opinion by Judge Thomas;
Concurrence by Judge Kleinfeld

16437

## COUNSEL

Claire M. Leary, San Francisco, California, for the appellant.

Jeffrey R. Finigan, Assistant United States Attorney, San Francisco, California, for the appellee.

**OPINION**

THOMAS, Circuit Judge:

In this appeal, we consider whether the district court violated the defendant's right of allocution when it denied a motion to close the courtroom for sentencing. We conclude that the defendant's rights were not violated, and affirm the judgment of the district court.

I

On May 4, 2005, an indictment was filed against Agosto Ayson Biagon and a dozen or so other defendants, charging them with conspiracy to steal valuable items, and theft of valuable items, found in U.S. mail bound for military personnel stationed in Japan. The defendants, including Biagon, worked at a company that provided temporary staffing for Nippon Cargo Airlines at the San Francisco International Airport. Biagon pled guilty to mail theft under 18 U.S.C. § 1708, Count Four of the indictment, on November 29, 2005. He admitted to stealing a laptop from the mail. In addition to pleading guilty, Biagon cooperated with the government, offering "valuable information against his co-defendants and about the conspiracy in general," identifying the individuals involved, corroborating the statements of another cooperator, and agreeing to cooperate in the future against an at-large defendant.

As a result of his cooperation and lack of criminal history, the pre-sentence report recommended Biagon receive a sentence of three months in prison followed by three years of supervised release, along with $2,000 in restitution. The government recommended the same sentence but contended that two years of supervised release was more appropriate. In his sentencing memorandum, Biagon requested that he be sentenced to live in a halfway house in lieu of three months in prison, allowing him to pay the $2,000 restitution while serv-

ing his time. He noted that no prison sentence would be required under the Sentencing Guidelines and suggested that he could be given a sentence exceeding three months if he could serve it in a halfway house.

The sentencing memoranda produced by both the government and Biagon were filed under seal. The government moved for an order sealing its sentencing memorandum because "Mr. Biagon cooperated with the government in this prosecution and revelation of these documents could jeopardize him."

At the beginning of the sentencing hearing, Biagon's attorney immediately asked the judge to clear the courtroom or move the hearing to the end of the day so that Biagon's cooperation with the government could be discussed freely, but the district judge refused:

> **Ms. Leary**: Your Honor, can the courtroom be cleared, or can we be moved to a point where it's easier —

> **The Court**: Well, I don't think it's necessary, in the sense that the matters are well laid out in the — both the presence report and in your respective sentencing memoranda; and so the issues that you raise are. . . . I understand your position, I understand the government's position, and I don't think it's necessary to bare them in court, and therefore, I don't believe — I've sealed the documents, but I don't need — I'm familiar with all of these cases. There are many of them. So I have a great deal of knowledge about what has happened in this case.

> **Ms. Leary**: I see.

> **The Court**: So if you want to refer to it in sort of elliptical terms, you can do so, but I'm not inclined to seal the courtroom.

The district court again addressed the cooperation issue when it stated: "putting aside the point that we're not going to discuss, which is sort of the elephant in the room here, but I'm familiar with the elephant as we all are . . . ." Later in the hearing, the district court gave Biagon the chance to exercise his right of allocution, asking if there was anything he wished to say. Presumably through a translator, Biagon stated: "I am asking for the forgiveness of this court, from the United States government, for my involvement in this case, and the people that I hurt, I asked for forgiveness. I am very sorry for what I did. And that's it." Neither Biagon nor his attorney mentioned his cooperation or referred to it during the hearing.

At the hearing, Biagon's counsel again asked for more than three months in a halfway house instead of three months in prison, in order to allow him to pay restitution, arguing that he would not be able to pay after prison because he would likely be deported upon release. The government continued to recommend a prison sentence. The district court sentenced Biagon to three months' imprisonment followed by a three-year term of supervised release. The court also ordered Biagon to pay restitution of $2,000. This timely appeal of his sentence followed.

## II

**[1]** The sole question in this appeal is whether Biagon's right of allocution was violated. "In the context of criminal law, the backbone of [our] democratic faith is the right of a criminal defendant to defend himself against his accusers; and it has long been recognized that allocution, the right of the defendant to personally address the court, is an essential element of a criminal defense." *Boardman v. Estelle*, 957 F.2d 1523, 1526 (9th Cir. 1992) (footnote omitted). "The purpose of the right of allocution is to allow a defendant to "bring mitigating circumstances to the attention of the court." *Sherman v. United States*, 383 F.2d 837, 839 (9th Cir. 1967). Due process requires that a defendant who seeks to speak must be

given such an opportunity before a sentence is imposed. *Boardman*, 957 F.2d at 1524. However, we have "never held that a defendant has a right to unlimited allocution." *United States v. Leasure*, 122 F.3d 837, 840 (9th Cir. 1997)

**[2]** The Federal Rules of Criminal Procedure specify a means of implementing this right. Before imposing a sentence, a district court must provide the defendant's attorney an opportunity to speak, and also must "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(4)(A)(i) and (ii). The right to allocution "may be satisfied by allowing a defendant an opportunity to make a statement before the end of sentencing but after the court has indicated its tentative conclusions on sentencing." *United States v. Leasure*, 122 F.3d 837, 840 (9th Cir. 1997).

**[3]** In this case, the record clearly shows that the district court asked Biagon whether there was anything he wished to say before sentence was imposed, and Biagon made a brief statement to the district court. Biagon actually exercised his right of allocution. He was not deprived of any constitutional right.

All of this is conceded by Biagon on appeal. However, he contends that because the district court did not grant defense counsel's motion to close the proceedings at the onset of the sentencing hearing, his right of allocution was infringed because he could not allocute fully.

**[4]** First, the district court did not err in denying the motion to close the courtroom. The Federal Rules of Criminal Procedure provide for a method of hearing a defendant's statement *in camera*. Rule 32 provides in relevant part that "[u]pon a party's motion and for good cause, the court may hear in camera any statement made under Rule 32(i)(4)." Fed. R. Crim. P. 32(i)(4)(C).

**[5]** However, Biagon did not make a motion under Rule 32(i)(4)(C). Rather, defense counsel simply requested closure of the courtroom at the onset of the hearing. The request was general; it was not tethered to Biagon's desire to allocute. Defense counsel did not argue at that time, nor later when Biagon exercised his right of allocution, that Biagon's right to allocute would be infringed if he were to allocute in open court.

**[6]** Under these circumstances, the district court was quite correct in denying the motion, particularly given that the motion was made orally at the hearing without prior notice. A notice to the public is required before a court may close court proceedings to which a qualified right of access exists. *Phoenix Newspapers, Inc. v. District Court*, 156 F.3d 940, 946 (9th Cir. 1998); *Oregonian Pub. Co. v. District Court*, 920 F.2d 1462, 1465 (9th Cir. 1990). Under the proper procedure, notice to the public would have been accomplished by the filing of a motion under Fed. R. Crim. P. 32(i)(4)(C). If that had been done, and if the district court had made proper findings, *see Phoenix Newspapers,* 156 F.3d at 949, *Oregonian,* 920 F.2d at 1466, then the defendant could have conducted his allocution *in camera*. Failure to follow the proper procedures as a predicate to closure of the courtroom would have been error. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8-9 (1986). As we noted in *Oregonian*:

> The Supreme Court has made clear that criminal proceedings and documents may be closed to the public without violating the first amendment only if three substantive requirements are satisfied: (1) closure serves a compelling interest; (2) there is a substantial probability that, in the absence of closure, this compelling interest would be harmed; and (3) there are no alternatives to closure that would adequately protect the compelling interest. *Press Enterprise*, 478 U.S. at 13-14 (test applied to accused's right to a fair trial). The court must not base its deci-

sion on conclusory assertions alone, but must make specific factual findings. *Id.* at 13-15.

920 F.2d at 1466.

[7] Given these considerations, without prior notice of the motion, much less an opportunity to follow the process required by the Supreme Court in *Press-Enterprise* for closure of a public criminal proceeding, the district court was entirely correct in denying the contemporaneous oral motion to close the hearing.

Second, the record clearly shows that the district court was fully aware of the extent of Biagon's cooperation with the government. Therefore, there is no merit to Biagon's suggestion that the district court did not consider his cooperation, or that his sentence would have been different if he had described the extent of his cooperation during his allocution.

[8] Finally, although the right to allocution is an important one, we have "never held that a defendant has a right to unlimited allocution." *Leasure*, 122 F.3d at 840. Here, the court did not restrict the defendant's statement in any respect. The defendant's apparent desire to say more was not communicated to the court, nor was the request for closure of the courtroom made specifically for the purpose of allowing in camera allocution. A sentencing court does not deny a defendant's constitutional right of allocution by declining a general request to close a courtroom for a sentencing hearing, particularly when the defendant fails to move for *in camera* allocution pursuant to Rule 32(i)(4)(C), is afforded the opportunity to allocute, and actually exercises the right to allocute. Not only was there no constitutional error, but the district court acted entirely properly under the circumstances in conducting the sentencing hearing.

**AFFIRMED.**

KLEINFELD, Circuit Judge, concurring:

I concur in the result the majority reaches, and in most of the reasoning. I respectfully disagree as to the matters discussed below.

The majority correctly points out that Biagon (1) had a constitutional right to allocution, (2) he exercised it, (3) he did not say that he had more that he wanted to say if he could speak in a closed courtroom, and (4) the judge did not abuse his discretion under Federal Rule of Criminal Procedure 32 in denying his lawyer's request at the commencement of the sentencing hearing to close the courtroom to the public or move the hearing to when everyone else (probably lawyers and defendants in other cases) would be gone. That is all that Biagon's brief puts before us.

Defense counsel did not want the public proceeding to reveal Biagon's cooperation with the government. His cooperation was the reason urged for lenience in sentencing. The judge said he was familiar with this "elephant in the room" and would consider it, so closing the courtroom in order to bring the "elephant" to his attention was unnecessary. The court's decision was within its discretion under Federal Rule of Criminal Procedure 32(i)(4)(C), because the "good cause" shown for *in camera* proceedings did not outweigh the interest in an open courtroom.[1]

That is all we needed to say to decide the case. The majority has said it.

I do not agree with the majority's holding that "Biagon did not make a motion." There is no requirement in the rule that a written motion be filed. Counsel's request was clear. Coun-

---

[1] Fed R. Crim. P. 32(i)(4)(C) ("In Camera Proceedings. Upon a party's motion and for good cause, the court may hear in camera any statement made under Rule 32(i)(4).").

sel often phrase oral motions as "requests." A "motion" is nothing more than a word lawyers use to refer to requests made of the court. There is no support for requiring more than what counsel did to invoke the court's discretion under Rule 32(i)(4)(C) to seal the courtroom.

The majority goes on to say, in error, that "[a] notice to the public is required before a court may close court proceedings to which a qualified right of access exists." That proposition is mistaken. The precedents the majority cites are *Oregonian Publishing Company v. United States District Court*[2] and *Phoenix Newspapers Inc. v. United States District Court*.[3] Neither is on point. Both cases are petitions for mandamus by newspapers for access to documents. In *Oregonian Publishing*, the newspaper wanted access to the plea agreement and related documents filed under seal.[4] In *Phoenix Newspapers*, we carefully restricted the reach of our opinion by saying that "[t]he issue to which our attention is directed is post-trial transcript access."[5] Neither case involves a defendant's request to conduct proceedings *in camera*, and neither case involves the right of the press or the public to be physically present in the courtroom during a sentencing hearing or any other kind of hearing.

I do not see a good reason to turn this easy case affirming denial of a defendant's motion to seal the courtroom into a case about an entirely different subject not raised by appellant's brief, a new press right to be present during sentencing hearings.

---

[2]*Oregonian Publishing Company v. United States District Court*, 920 F.2d 1462 (9th Cir. 1990).

[3]*Phoenix Newspapers Inc. v. United States District Court*, 156 F.3d 940 (9th Cir. 1998).

[4]*Oregonian Publishing*, 920 F.2d at 1464.

[5]*Phoenix Newspapers*, 156 F.3d at 947.

Generally courtrooms ought to be open and ordinarily sentencing hearings ought to be open, as this one quite properly was. In criminal prosecutions, the right to a "public trial" is protected by the Sixth Amendment. The public and whatever press have any interest, including newspapers, freelance writers, bloggers and anyone else, ought generally to be able to see what is going on in courtrooms, including sentencing hearings. But occasionally there is a good reason to hold sentencing proceedings, at least partially, *in camera*.

The most common reason for *in camera* proceedings during sentencing arises when a defendant has cooperated with the government. The purpose is to protect him or her from being murdered by individuals sharing the defendant's interest, or fellow prisoners who find out that he was a "snitch." Many criminals have strong feelings about people they call "snitches," even where their own cases were not affected. It is one thing to send a defendant to jail or prison and quite another to set him up to be hurt or killed there.

Another commonly arising reason for *in camera* proceedings is where details of sexual matters will be exposed, such as where children and others testify about the consequences of being molested. Sometimes embarrassing medical information has to be brought before the court. Sometimes the victim of a financial crime does not want the public to know just how precarious his or her business or charity is on account of the defendant's fraud or embezzlement, because exposure will complete the destruction the defendant started. Sometimes the government has to bring out matters of national security. These are only some of the many legitimate "good cause" considerations that the court should weigh when it exercises its discretion under Rule 32(i)(4)(C).

An oral request without prior notice has been consistent with the law, at least until this case. Rule 32(i)(4)(C), *Phoenix Newspapers*, and *Oregonian Publishing* say nothing to the contrary. Where last minute oral notice unduly risks the pub-

lic interest in access, the court has discretion to require that a written motion be filed, and may continue the proceeding so that the press or other public interests in openness can be heard and considered. There is no basis in the rule or the cases the majority relies on for denying the court this discretion. Sometimes the court will require a written motion or issue a continuance on a party's motion or on its own motion. Judges read newspapers, look at blogs, and notice crowds in the spectator seats, so they have some sense of what cases have attracted public interest. Sometimes the court may reasonably proceed immediately on an oral motion with an *in camera* proceeding, where, for example, a public proceeding might get someone killed or cause needless embarrassment in a matter of no apparent public concern, or a reluctant victim or witness has just agreed to testify.

We ought not use this case as a vehicle to develop a new rule unnecessary to a decision that may sacrifice other important public interests to the interest in press access.