#26764-a-DG

**2014 S.D. 61**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,                                    Plaintiff and Appellee,

    v.

RODNEY SCOTT BERGET,                                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE BRADLEY G. ZELL
Judge

* * * *

MARTY J. JACKLEY
Attorney General

PAUL S. SWEDLUND
Assistant Attorney General
Pierre, South Dakota                                    Attorneys for plaintiff
                                              and appellee.

JEFF LARSON
Sioux Falls, South Dakota
     and
CHERI SCHARFFENBERG of
Olson, Waltner & Scharffenberg
Tea, South Dakota                                    Attorneys for defendant
                                              and appellant.

* * * *

ARGUED ON MAY 27, 2014

OPINION FILED **08/13/14**

#26764

GILBERTSON, Chief Justice

[¶1.]        A South Dakota circuit court sentenced Rodney Scott Berget to death for the murder of corrections officer Ronald Johnson, a crime he committed while incarcerated at the South Dakota State Penitentiary in Sioux Falls.  On direct appeal of that sentence, in *State v. Berget* (*Berget I*),  this Court determined that the circuit court may have improperly considered, for sentencing purposes, statements made by Berget in a psychological evaluation procured to determine his competency to stand trial.  2013 S.D. 1, ¶¶ 92, 119, 826 N.W.2d 1, 28, 37.  We remanded Berget's death sentence for the limited purpose of resentencing "without the use of or consideration of" the psychological evaluation unless Berget opted to call its author to testify, and otherwise "on the existing record."  *Id.* ¶¶ 118, 120, 826 N.W.2d at 37.  Berget now appeals the circuit court's amended judgment of conviction sentencing him to death.  We affirm.

## Background

[¶2.]        The details of Berget's crime and the procedural posture of his first appeal are set out in *Berget I*, 2013 S.D. 1, ¶¶ 2-10, 826 N.W.2d at 8-10.  This appeal concerns the limited remand instructed in *Berget I* and proceedings subsequent thereto.  The relevant facts are provided below.

[¶3.]        In *Berget I*, this Court affirmed Berget's death sentence on eleven of twelve issues.  *See id.* ¶ 121, 826 N.W.2d at 37.  The twelfth issue regarded the circuit court's potentially improper consideration of aggravating evidence in rendering Berget's death sentence.  *Id.* ¶¶ 91-118, 826 N.W.2d at 28-37.

-1-

Specifically, we noted that after the sentencing hearing,[1] when the circuit court announced its sentence, the court indicated that it had considered Berget's early acceptance of responsibility for the murder of Ronald Johnson as mitigation. *Id.* ¶ 92, 826 N.W.2d at 28. However, the circuit court then cited an admission Berget gave during a psychiatric evaluation, which was contained in a report to determine Berget's fitness to stand trial. The evaluation had previously been sealed and was not admitted as evidence in the sentencing hearing. *Id.* It contained Berget's admission to the psychiatrist, Dr. David Bean, that he pleaded guilty to Johnson's murder because he "wish[ed] it would be over." *Id.* The circuit court stated that this admission did not reflect the intentionality that made early acceptance a mitigating factor. *Id.* On appeal, we agreed with Berget that the circuit court might have committed prejudicial error by improperly considering this admission as aggravating evidence. *Id.* ¶¶ 116-118, 826 N.W.2d at 36-37.

[¶4.] To address this error, this Court concluded its opinion with instructions: "Pursuant to SDCL 23A-27A-13(2), we remand to the circuit court for the purpose of conducting a sentencing without this error. Per this statute, it is to be conducted on the existing record without reference to, or considering of, the report of Dr. Bean."[2] *Id.* ¶ 120, 826 N.W.2d at 37.

---

1.  The sentencing court took the matter under advisement and pronounced its initial sentence four days after the completion of the initial sentencing hearing. There is no dispute Berget had an unrestricted opportunity to present all mitigation evidence he desired the court to consider at the sentencing hearing.

2.  We also instructed that Berget could "opt[ ] to call Dr. Bean to testify." *Id.* ¶ 118, 826 N.W.2d at 37. This was the only new evidence—in addition to the

(continued . . .)

[¶5.]    On the day after this Court handed down its opinion and judgment, the State filed a motion for a hearing consistent with the opinion of this Court. The State acknowledged in its motion that it would not object to Berget introducing the psychiatric report "with such supplemental direct and cross-examination testimony of the psychiatrist as Berget might choose to place on the record." Berget filed a petition for rehearing on the appeal, which we subsequently denied by order entered January 22, 2013.

[¶6.]    A month after we handed down our opinion and judgment, Berget sent a letter to the circuit court, pursuant to SDCL 15-12-21.1, requesting that it disqualify itself from the remanded proceeding on grounds of judicial bias. In his affidavit supporting recusal, Berget claimed three instances of bias: (1) the circuit court had to find against Berget's assertions of fact at sentencing or it would risk contradicting its findings of fact and jeopardizing the death sentence in the case of Berget's co-defendant, Eric Robert, (2) the Supreme Court had found that the circuit court committed error in its presentence hearing verdict, and (3) the circuit court had rendered its sentencing decision "through legal analysis only." The circuit court denied Berget's request for recusal on February 22, 2013. The Presiding Circuit Judge of the Second Judicial Circuit entered an order on March 8, 2013, denying Berget's formal recusal request. The Presiding Judge based the order on Berget's waiver of his right to disqualify the circuit court, pursuant to SDCL 15-12-24, by

---

(. . . continued)

record at the time of sentencing and the arguments of counsel thereon—that the circuit court could have considered for sentencing purposes on remand. The transcript of the remand motions hearing indicates the circuit court repeatedly inquired whether Berget wanted to exercise the option of calling Dr. Bean to testify. Berget responded in the negative each time.

him having already "submitted multiple arguments and proofs in support of motions" to the court prior to his request for recusal.

[¶7.] Berget also filed a demand for a new sentencing hearing to introduce new evidence. That evidence, allegedly obtainable only after his original sentencing, showed that "Berget has established a meaningful relationship with his son, his daughter-in-law, and his two grandchildren," and that the relationship "has made a positive impact on the lives of [Berget's] family, even while [Berget is] in prison for the rest of his life." Berget argued, in spite of this Court's clear directions on remand, that the circuit court "ha[d] the inherent power to grant a new [sentencing] hearing" and that his federal constitutional rights required it do so.

[¶8.] The circuit court held a motions hearing on Berget's demand for a hearing on April 16, 2013. Berget repeatedly declined the circuit court's offer to have Dr. Bean testify. He reasserted his federal constitutional law arguments and contention that the circuit court had the authority to grant a new sentencing hearing in the face of contrary remand directions by this Court. Berget further argued that our remand instructions were improper because we could not rely on SDCL 23A-27A-13(2) to justify our limited remand for resentencing and that our directions on remand were otherwise unclear. Finally, Berget reinforced his argument that his father-son relationship evidence was new and had not been withheld for dilatory reasons. The circuit court rejected Berget's arguments by noting that our instructions on remand were clear, that as a circuit court it was bound to limit its jurisdiction on remand to those instructions, and that a new sentencing hearing would violate our directive. The circuit court declined to make a ruling on Berget's constitutional arguments because it determined that they were

outside its limited remand jurisdiction. After considering Berget's offer of proof—and without further evidence to consider beyond the evidence, argument and allocution it considered in Berget's original sentencing—the circuit court determined that another sentence hearing would serve no purpose given our remand instructions, and it orally denied Berget's demand for a new sentencing hearing.

[¶9.] The circuit court entered a written order on May 7, 2013, denying Berget's motions for a sentencing hearing, to introduce new mitigation evidence, and to disqualify itself. That same day, the court entered its amended presentence hearing verdict. Thereafter, both the State and Berget submitted proposed findings of fact and conclusions of law. After considering the proposed amended findings of fact and conclusions of law from Berget and the State, and the objections thereto, the circuit court notified the parties that it would adopt the State's amended findings and conclusions in the court's e-mail of June 7, 2013. The court's amended findings of fact and conclusions of law were entered that day. The court entered an amended judgment of conviction and sentence, and the death warrant, on June 24, 2013. Berget timely appealed. This Court entered an order for stay of execution on August 7, 2013.[3]

---

3.  Because of the limited scope of remand and the clarity of the issues presented by both parties, the Court originally anticipated considering this appeal on the written arguments of counsel and without oral argument during its April 2014 Term. That determination is normally at the discretion of the Court. *See* SDCL 15-26A-82. However, we received notice that the Legislature placed an additional procedural requirement on the Court in cases where a circuit court imposes capital punishment: "Both the defendant and the state shall have the right . . . to present oral argument to the court." SDCL 23A-

(continued . . .)

## Analysis

[¶10.]      Berget now raises three issues in appealing his resentence on remand. Berget's first and second arguments derive from the circuit court's denial of Berget's demand for a new sentencing hearing.  He argues the court erred (1) by failing to consider his newly discovered mitigation evidence in reimposing his death sentence and (2) by preventing him from being present and being able to allocute when it reimposed its sentence.  Berget's third argument is that the circuit court erred by refusing to recuse itself from resentencing.  In addition to Berget's issues, SDCL 23A-27A-12 requires that this Court make three determinations whenever a circuit court imposes the death penalty, specifically:

> (1)      Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and
> (2)      Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in § 23A-27A-1; and
> (3)      Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.

*Id.* [4]

[¶11.]      **1.      Whether the circuit court was required to consider Berget's new mitigation evidence in its judgment upon limited remand.**

---

(. . . continued)
        27A-11.  Because Berget exercised that right, we heard oral argument in this matter during the May 2014 Term.

4.      Although these issues were addressed in the prior direct appeal, and SDCL 23A-27A-12 is silent as to whether they must be addressed on appeal of a limited resentencing, we nevertheless address these questions after analyzing the errors Berget advances on this appeal.

[¶12.] As noted above, Berget made an offer of proof at the remand motions hearing regarding the nature and scope of the alleged newly discovered mitigation evidence of Berget's positive relationship with his son and his son's family. Berget faults the circuit court's exclusion of this evidence from its sentencing deliberation by advancing two theories. First, Berget challenges both the "clarity" of this Court's instructions for a limited remand for resentencing in *Berget I*, 2013 S.D. 1, ¶¶ 118, 120, 826 N.W.2d at 37, and the statutory authority that we relied on, in part, to so limit the scope of the limited resentencing, *id.* ¶ 120 (citing SDCL 23A-27A-13(2)). Second, Berget asserts that even if there was statutory authority to support limiting the scope of remand, that limitation on the admission of his new mitigation evidence violated his Eighth and Fourteenth Amendment rights.

[¶13.] Upon review, "'[a] [circuit] court's evidentiary rulings are presumed correct and will not be reversed unless there is a clear abuse of discretion.'" *Wilcox v. Vermeulen*, 2010 S.D. 29, ¶ 7, 781 N.W.2d 464, 467 (quoting *Thompson v. Mehlhaff*, 2005 S.D. 69, ¶ 21, 698 N.W.2d 512, 519-20). An abuse of discretion occurs when the circuit court exercises its discretion "'to an end or purpose not justified by, and clearly against reason and evidence.'" *St. John v. Peterson*, 2011 S.D. 58, ¶ 10, 804 N.W.2d 71, 74 (quoting *Mousseau v. Schwartz*, 2008 S.D. 86, ¶ 10, 756 N.W.2d 345, 350). This Court, in turn, will not overturn the circuit court's abuse of discretion unless that "error is 'demonstrated . . . [and] shown to be prejudicial error.'" *State v. Smith*, 1999 S.D. 83, ¶ 39, 599 N.W.2d 344, 353 (alteration in original) (quoting *State v. Spiry*, 1996 S.D. 14, ¶ 11, 543 N.W.2d 260, 263). We, however, review de novo the circuit court's application of the law

underlying the circuit court's exercise of discretion. *See State v. Rolfe*, 2013 S.D. 2, ¶ 15, 825 N.W.2d 901, 905.

[¶14.] **a. This Court's authority to direct a limited resentencing upon remand.**

[¶15.] Berget argues this Court's remand instructions "somewhat perplexed" the circuit court. Berget attests that this "confusion is understandable" because the statute cited by the Court, SDCL 23A-27A-13(2), as additional authority for its limited resentencing instruction, was not proper authority on that point. Instead, noting the language of the statute, Berget believes this provision only authorizes a limited resentencing when the Court remands a death sentence for proportionality issues. Because this Court in *Berget I* affirmed each of the proportionality issues therein argued by Berget, 2013 S.D. 1, ¶¶ 18-31, 826 N.W.2d at 11-14, he contends that our limited remand and the subsequent limited resentencing violated state law.

[¶16.] First, regarding Berget's assertion of "confusion"—nowhere in the transcript of the motions hearing or elsewhere on the record did the circuit court express confusion with this Court's instructions. As the hearing transcript indicates, the court restated our directions, noted their clarity, and in the face of Berget's constitutional assertions, adhered to them. Only Berget's oral argument asserted any "confusion," and did so as the basis of argument.

[¶17.] Whether or not this Court misconstrued SDCL 23A-27A-13 in citing it as *additional* authority for its limited remand instructions is immaterial. This Court has general statutory and constitutional authority to mandate the scope of review on limited remand. As we recently noted in *State v. Piper* (*Piper III*), 2014

S.D. 2, ¶ 9, 842 N.W.2d 338, 342, both SDCL 15-30-14 and 15-30-11 require the lower court to enforce our explicit instructions on remand. "'When the scope of remand is limited, the entire case is not reopened, but rather, the lower tribunal is only authorized to carry out the appellate court's mandate.'" *Piper III*, 2014 S.D. 2, ¶ 11, 842 N.W.2d at 343 (quoting *In re Conditional Use Permit Granted to Van Zanten*, 1999 S.D. 79, ¶ 13, 598 N.W.2d 861, 864).

[¶18.]	Article V of the South Dakota Constitution requires this deference and clear adherence to this Court's remand instruction to constitutionally function. Otherwise, each circuit court would become a supreme court unto itself. *See Piper III*, 2014 S.D. 2, ¶ 10, 842 N.W.2d at 343 ("If the circuit court's original jurisdiction could spontaneously resurrect on remittal, the defined roles of our tiered judicial system . . . and the judicial certainty and efficiency they foster would be nullified.").

[¶19.]	Given this binding authority, we conclude this Court had the ability pursuant to state constitutional and statutory law to direct a limited resentencing in *Berget I* and the circuit court was to follow, and did follow, our directions in accordance with that authority.

[¶20.]	**b.	The federal constitutionality of the limited resentencing.**

[¶21.]	Berget contends the Eighth and Fourteenth Amendments nevertheless override the Court's authority to limit resentencing to exclude newly discovered mitigation evidence. Because the Court's authority to instruct a limited resentencing in *Berget I* was derived from Article V of our state constitution and from statute, Berget's federal constitutional arguments are in essence challenges to the constitutionality of these provisions as applied. His burden is thus:

> There is a strong presumption that the laws enacted by the legislature are constitutional and the presumption is rebutted only when it clearly, palpably and plainly appears that the statute violates a provision of the constitution. Further, the party challenging the constitutionality of a statute bears the burden of proving beyond a reasonable doubt that the statute violates a state or federal constitutional provision.

*Vilhauer v. Horsemens' Sports, Inc.*, 1999 S.D. 93, ¶ 16, 598 N.W.2d 525, 528 (quoting *Green v. Siegel, Barnett & Schutz*, 1996 S.D. 146, ¶ 7, 557 N.W.2d 396, 398). "'A defendant cannot claim that a statute is unconstitutional in some of its reaches if it is constitutional as applied to him.'" *State v. Jensen*, 2003 S.D. 55, ¶ 13, 662 N.W.2d 643, 648 (quoting *City of Pierre v. Russell*, 89 S.D. 70, 74, 228 N.W.2d 338, 341 (1975)). Berget, therefore, must establish beyond a reasonable doubt that the narrow scope of our limited remand violated the United States Constitution. We review this constitutional contention de novo. *See Green*, 1996 S.D. 146, ¶ 7, 557 N.W.2d at 398 (citing *Kyllo v. Panzer*, 535 N.W.2d 896, 897 (S.D. 1995)).

[¶22.]	A proper analysis of Berget's assertion of error requires a summary of Supreme Court case law on the evolution of capital sentencing rights. The roots of capital "mitigation evidence" are found in the Supreme Court case that reestablished the death penalty as viable under the Eighth Amendment, *Gregg v. Georgia*, 428 U.S. 153, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976). The Court in *Gregg* clarified that the prior case, which effectively abolished the death penalty nationwide, *Furman v. Georgia*, 408 U.S. 238, 92 S. Ct. 2726, 33 L. Ed. 2d 346 (1972), did not hold that the death penalty was a per se violation of the Eighth Amendment. 428 U.S. at 188, 96 S. Ct. at 2932. Instead, "Furman held that [the death penalty] could not be imposed under sentencing procedures that created a substantial risk that it would be inflicted in an arbitrary and capricious manner."

*Id.* To prevent this, the Court began by applying the common precept of sentencing that in mitigation or aggravation, "'justice generally requires . . . that there be taken into account the circumstances of the offense together with the character and propensities of the offender.'" *Id.* at 189, 96 S. Ct. at 2932 (quoting *Pennsylvania ex rel. Sullivan v. Ashe*, 302 U.S. 51, 55, 58 S. Ct. 59, 61, 82 L. Ed. 43 (1937)). The Court then acknowledged that much of this evidence, although relevant for sentencing purposes, would be properly excluded as prejudicial or irrelevant on the question of guilt. *Id.* at 190, 96 S. Ct. at 2933. Because a jury "cannot be expected to consider certain evidence before it on one issue, but not another," *id.* at 190 n.40, 96 S. Ct. at 2933 n.40 (citations omitted), the Court suggested solving the challenge through a bifurcated trial, wherein a determination of guilt occurs first, and then, if the defendant is found guilty, a determination of whether a death sentence will issue, *see id.* at 190-92, 96 S. Ct. at 2933-34.

[¶23.]     Although *Gregg* provided a starting point on the definition of admissible mitigation evidence, its common sentencing definition was soon broadened. Because of the severity of the death penalty, a plurality of the United States Supreme Court determined "the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, *as a mitigating factor*, *any aspect* of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *See Lockett v. Ohio*, 438 U.S. 586, 604, 98 S. Ct. 2954, 2964-65, 57 L. Ed. 2d 973 (1978) (second emphasis added) (footnote omitted). The sentencing authority's broad consideration of defendant-specific characteristics was viewed as a bulwark against the arbitrary and

capricious use of the death penalty and ensured that "the death penalty would be imposed in a more consistent and rational manner." *Id.* at 601, 98 S. Ct. at 2963 (citation omitted). Such liberality achieved this consistency by providing a "meaningful basis for distinguishing the . . . cases in which [the death penalty] is imposed from . . . the many cases in which it is not." *Id.* (citing *Gregg*, 428 U.S. at 188, 96 S. Ct. at 2932). That plurality holding became the majority position in *Eddings v. Oklahoma*, 455 U.S. 104, 102 S. Ct. 869, 71 L. Ed. 2d 1 (1982). "By holding that the sentence in capital cases must be permitted to consider any relevant mitigating factor, the rule in *Lockett* recognizes that a consistency produced by ignoring individual differences is a false consistency." *Id.* at 112, 102 S. Ct. at 875 (adopting the plurality opinion in *Lockett*). Accordingly, at sentencing, "virtually no limits are placed on the relevant mitigating evidence a capital defendant may introduce concerning his own circumstances." *See Payne v. Tennessee*, 501 U.S. 808, 822, 111 S. Ct. 2597, 2607, 115 L. Ed. 2d 720 (1991).

[¶24.] The sentencing authority must then consider all of the relevant mitigating evidence admitted at sentencing. "Just as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, *as a matter of law*, any relevant mitigating evidence." *Eddings*, 455 U.S. at 113-14, 102 S. Ct. at 876-77. "The sentencer, and the Court of Criminal Appeals on review, may determine the weight to be given relevant mitigating evidence. But they may not give it no weight by excluding such evidence from their consideration." *Id.* at 114-15, 102 S. Ct. at 877.

[¶25.] Berget argues this broad scope of relevant mitigating evidence requires that we adopt his position. However, the concern in this case is narrower and

-12-

regards a matter outside the bifurcated trial procedure established in *Gregg* to which the requirements of a broad scope of relevant mitigating evidence and their mandated consideration by the sentencing authority (*Lockett* and *Eddings*) explicitly apply. The issue, rather, is whether the Eighth and Fourteenth Amendments prohibit this Court from narrowing the circuit court's jurisdiction, upon a *limited remand for resentencing* in a capital case, such that the court could not consider relevant evidence for mitigation purposes discoverable only after remand.[5]

[¶26.]      Berget relies on *Skipper v. South Carolina*, 476 U.S. 1, 106 S. Ct. 1669, 90 L. Ed. 2d 1, (1986), which held that new, relevant mitigating evidence may be introduced at least through a capital defendant's period of incarceration while awaiting trial. In that case, Skipper and his former wife testified during the sentencing phase that he had "conducted himself well during the 7½ months he spent in jail between his arrest and trial" and had earned his high school diploma. *Id.* at 3, 106 S. Ct. at 1670. He asserted that this behavior was indicative of his future conduct in custody and that his sentence should therefore have been reduced to life imprisonment. *Id.* In further support, Skipper sought to introduce testimony from jailers and a "regular visitor" to the jail that he had "made a good adjustment," indicating his future adaptability to prison life. *Id.* The sentencing court ruled that such evidence was irrelevant and therefore inadmissible, citing state case law that a defendant's ability to adjust to life behind bars could not be relevant to capital

---

5.      The circuit court's findings of fact and conclusions of law entered after its original sentencing indicate that at that time it was known to Berget and the circuit court that Berget had a son.

sentencing. *Id.* The sentencing jury subsequently sentenced Skipper to death. *Id.* On appeal, Skipper asserted that the sentencing court had committed constitutional error, pursuant to *Lockett* and *Eddings*, by excluding the relevant, mitigating testimony of the jailers and the visitor. *Id.*

[¶27.] The Supreme Court agreed with Skipper. While the Court admitted that "any such inferences" arising out of the "good adjustment" testimony "would not relate specifically to petitioner's culpability for the crime he committed," the Court found that this testimony nevertheless provided mitigation inferences "in the sense that [the inferences] might serve 'as a basis for a sentence less than death.'" *Id.* at 4-5, 106 S. Ct. at 1671 (quoting *Lockett*, 438 U.S. at 604, 98 S. Ct. at 2964). The Court implied that this "basis for a sentence less than death" arose out of its previous holding that "evidence that a defendant would in the future pose a danger to the community if he were not executed may be treated as establishing an 'aggravating factor' for purposes of capital sentencing." *Id.* (citing *Jurek v. Texas*, 428 U.S. 262, 275, 96 S. Ct. 2950, 2958, 49 L. Ed. 2d 929 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)). The Court reasoned that if evidence of a future danger could always be admissible as aggravating evidence, then evidence indicating the inverse—that a defendant "would not pose a danger if spared (but incarcerated)"— was applicable to death penalty cases generally as a "potentially mitigating" factor. *Id.* at 5. As such a factor, it "[could] not be excluded from the sentencer's consideration." *Id.* The Court concluded, "'any sentencing authority must predict a convicted person's probable future conduct when it engages in the process of determining what punishment to impose.'" *Id.* at 5, 106 S. Ct. at 1671 (quoting *Jurek*, 428 U.S. at 275, 96 S. Ct. at 2958). Because the sentencing court excluded

-14-

the future conduct testimony of the jailers and visitor from the sentencing jury, the Court determined the sentencing court had violated Skipper's Eighth Amendment right to present all mitigating evidence. *See id.* at 4, 106 S. Ct. at 1671.

[¶28.]     Evidence of Berget's newfound relationship with his son and his son's family conceivably could have been relevant evidence that Berget would not pose a danger in prison if spared, particularly under *Lockett*'s broad instruction that "any aspect of [the] defendant's character . . . that the defendant proffers as a basis for a sentence less than death" can be mitigating information. 438 U.S. at 604, 98 S. Ct. at 2964-65. Taking *Skipper* and *Lockett* together, then, Berget's relationship may have been evidence the court could not have excluded from its consideration if Berget offered it at any point prior to completion of the sentencing portion of the trial. *See Skipper*, 476 U.S. at 5, 106 S. Ct. at 1671.

[¶29.]     Berget's constitutional argument, however, relies on extending the window for unconstitutional exclusion of new mitigation evidence further, to include mitigating information discoverable only after the original sentencing and offered before resentencing.[6] To find authority supporting this proposition, Berget relies on the *Skipper* Court's instructions on remand. *See id.* at 8, 106 S. Ct. at 1673 ("The resulting death sentence cannot stand, although the State is of course not precluded from again seeking to impose the death sentence, provided that it does so through a *new sentencing hearing* at which petitioner is permitted to present *any and all*

---

6.     Berget does not dispute the State's assertion, citing *State v. Robert*, 2012 S.D. 60, ¶ 20, 820 N.W.2d 136, 143 (citing *Schriro v. Landrigan*, 550 U.S. 465, 479, 127 S. Ct. 1933, 1942, 167 L. Ed. 2d 836 (2007)), that mitigation information reasonably discoverable before sentencing is waived when a capital defendant fails to present the evidence at sentencing.

*relevant mitigating evidence that is available.*" (Emphases added.)). The Court, however, did not clarify whether it meant "all relevant mitigation evidence that is available" on the existing record at the original sentencing or on the record that could be developed up to resentencing.

[¶30.] Regardless of the Court's intent, that instruction is not appropriate authority to support Berget's claim since his case is readily distinguishable. As with all authoritative case precedent, the result in *Skipper* and "those portions of the opinion necessary to that result" are binding. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67, 116 S. Ct. 1114, 1129, 134 L. Ed. 2d 252 (1996). The *Skipper* Court's instruction of a new sentencing hearing was the necessary result of the sentencing court's error in excluding mitigation evidence from a sentencing jury's consideration, thereby tainting the subsequent sentencing hearing. A new, full sentencing hearing was "necessary" because it would be required to probe the value of the wrongly excluded testimony, since its contribution to the sentencing authority's weighing[7] of mitigating and aggravating factors was otherwise undefined. Consequently, the sentencing authority could have given the wrongly excluded mitigating factor such weight that it alone was grounds for a life sentence.

---

7. Our use of the word "weighing" in this context does not contradict the fact that South Dakota is a non-weighing state. *See State v. Rhines* (*Rhines II*), 2000 S.D. 19, ¶¶ 52-53, 608 N.W.2d 303, 314. In describing the distinction between weighing and non-weighing states, the Supreme Court has noted, "[t]he terminology is somewhat misleading, since we have held that in *all* capital cases the sentencer must be allowed to weigh the facts and circumstances that arguably justify a death sentence against the defendant's mitigating evidence." *Brown v. Sanders*, 546 U.S. 212, 216-17, 126 S. Ct. 884, 889, 163 L. Ed. 2d 723 (2006) (citing *Eddings*, 455 U.S. at 110, 102 S. Ct. at 874)

[¶31.] In Berget's case, the apparent error was very different. Unlike *Lockett*, *Eddings* and *Skipper*, the circuit court here did not improperly exclude evidence from the sentencing hearing, but only improperly considered evidence (if it did so at all) after the hearing was completed, during its deliberation. *See Berget I*, 2013 S.D. 1, ¶ 119, 826 N.W.2d at 37. The sentencing hearing itself was not tainted because Berget exercised the unrestricted opportunity to introduce all mitigating evidence he desired.[8] Furthermore, once the Dr. Bean report was excluded, the remaining

---

8. Berget asserts that because the court received Dr. Bean's report before the sentencing hearing, its mere existence in the record in that phase of the proceeding—albeit sealed throughout the hearing—was sufficient to taint the entire sentencing phase. Objectively, however, there was no indication in the hearing transcript or elsewhere that the court improperly considered Berget's admission to Dr. Bean or unsealed the report until its deliberation in drafting its presentence hearing verdict. The report was not offered into evidence or even mentioned at the sentencing hearing. *See Berget I*, 2013 S.D. 1, ¶ 94, 826 N.W.2d at 29. In order for the Court to adopt Berget's argument, we would need to speculate on the mental processes of the court, which we will not do.

If the court erred, then, it did so by improper weighing of mitigation evidence. *See Berget I*, 2013 S.D. 1, ¶ 118, 826 N.W.2d at 37. That error is an order of magnitude lower than if the court had excluded mitigating evidence from its consideration. The constitution clearly prohibits exclusion of relevant, mitigating evidence obtained before sentencing in a capital decision. *See Lockett*, 438 U.S. at 604, 98 S. Ct. at 2964-65. The necessary remedy for violating this prohibition is remand to the circuit court for its consideration of all relevant mitigating evidence. *See Eddings*, 455 U.S. at 117, 102 S. Ct. at 878. The same cannot be said for the improper consideration of aggravating evidence. The constitution, in fact, permits an appellate court to reweigh the proper evidence and impose the death penalty in response to an error in the trial court's weighing of the evidence. *See Clemons v. Mississippi*, 494 U.S. 738, 745, 110 S. Ct. 1441, 1446, 108 L. Ed. 2d 725 (1990); *Spaziano v. Florida*, 468 U.S. 447, 104 S. Ct. 3154, 82 L. Ed. 2d 340 (1984) (approving a state appellate court's affirmance of a death conviction by reweighing the aggravating and mitigating evidence after that court's determination that an aggravating circumstance was improperly submitted to the factfinder). This is particularly true in non-weighing states. *See Rhines II*, 2000 S.D. 19, ¶ 54, 608 N.W.2d at 315 (quoting *Stringer v. Black*, 503 U.S. 222, 231-32, 112 S.

(continued . . .)

evidence and factors in mitigation and aggravation remained unchanged from those considered by the circuit court in the initial sentencing hearing. Therefore, we determined that a limited resentencing on the prior record—that merely struck the offensive evidence or permitted its elaboration by Berget through Dr. Bean—would be sufficient to correct this error on remand.[9] In directing a limited remand, we

_____

(. . . continued)

Ct. 1130, 1137, 117 L. Ed. 2d 367 (1992)) ("*When the weighing process itself has been skewed, . . . harmless-error analysis or reweighing at the trial or appellate level suffices to guarantee that the defendant received an individualized sentence.*"). That authority is further described by the Supreme Court:

> If a person sentenced to death in fact killed, attempted to kill, or intended to kill, the Eighth Amendment itself is not violated by his or her execution regardless of who makes the determination of the requisite culpability; by the same token, if a person sentenced to death lacks the requisite culpability; the Eighth Amendment violation can be adequately remedied by any court that has the power to find the facts and vacate the sentence.

*Cabana v. Bullock*, 474 U.S. 376, 386, 106 S. Ct. 689, 697, 88 L. Ed. 2d 704 (1986), *abrogated on other grounds by Pope v. Illinois*, 481 U.S. 497, 107 S. Ct. 1918, 95 L. Ed. 2d 439 (1987).

9.   In the past, this Court has not hesitated to require a full sentencing hearing on remand in a death penalty case when the nature of the error warranted that outcome. For instance, in *Piper II*, 2009 S.D. 66, ¶ 21, 771 N.W.2d at 360, we vacated Piper's death sentence and remanded the matter "for a new sentencing proceeding" because Piper had not validly waived his constitutional right to a jury in the sentencing phase. The constitutional error in *Piper II* occurred before the sentencing hearing, and the nature of the error affected the entire sentencing proceeding. In contrast, the error prompting Berget's limited resentencing occurred after the sentence hearing, and did not taint the hearing. Again, only the circuit court's possible consideration of improper aggravating evidence may have needed correction, requiring a limited remand, if any. *See Clemons*, 494 U.S. at 745, 110 S. Ct. at 1446.

That potential error, and the limited remand we instructed to address it in *Berget I*, stands in stark contrast to another case involving a remand for

(continued . . .)

presume the circuit courts "know the law and [will] apply it in making [their] decisions." *State v. Page*, 2006 S.D. 2, ¶ 27, 709 N.W.2d 739, 754 (quoting *Walton v. Arizona*, 497 U.S. 639, 653, 110 S. Ct. 3047, 3057, 111 L. Ed. 2d 511 (1990)). "We have recognized [ ] that South Dakota law imposes no specific standard of proof in regard to mitigation." *Id.* ¶ 50, 709 N.W.2d at 758 (citing *Rhines II*, 2000 S.D. 19, ¶ 39 n.9, 608 N.W.2d at 312 n.9). The limited resentencing consequently reflected our preference, in this instance, not to reweigh the aggravating and mitigating evidence without the offending concern ourselves, but to have the sentencing authority

---

(. . . continued)

> sentencing, *State v. Bult* (*Bult IV*), 1996 S.D. 20, 544 N.W.2d 214. *Bult IV* arose out of our repeated remands to the circuit court, after the court continued to impose life sentences without the possibility of parole and in spite of our repeat conclusions that that sentence constituted cruel and unusual punishment. *See State v. Bult* (*Bult III*), 529 N.W.2d 197 (S.D. 1995); *Bult v. Leapley* (*Bult II*), 507 N.W.2d 325 (S.D. 1993). In *Bult IV*, we established that "the court had an obligation" on remand from *Bult III* to update the relevant evidence necessary to fashion a sentence, *see Bult IV*, 1996 S.D. 20, ¶ 12, 544 N.W.2d at 217, which included mitigating evidence. However, *Bult IV* is clearly distinguishable from the present case. In *Bult III*, we did not instruct a limited remand as we did in *Berget I*, but permitted a full sentence hearing on remand because the nature of the error warranted that type of remand. *See Bult III*, 529 N.W.2d at 200. Our opinion here does not erode *Bult IV"s* conclusion that at a full sentencing hearing on remand, the defendant is entitled to the rights available at his or her original sentencing. *See* 1996 S.D. 20, ¶¶ 8-14, 544 N.W.2d at 216-17. What *Bult IV* did not do was establish a right to update one's mitigation evidence on any remand, or when directly contradicted by our remand instructions as Berget seeks here. *Bult IV*, in fact, stands for the supremacy of our remand authority, which we reassert here.
>
> Multiple state supreme courts have affirmed similar limited remands of capital sentences. *See, e.g., Ex parte Slaton*, 680 So. 2d 909, 922-23 (Ala. 1996), *cert. denied*, 519 U.S. 1079 (1997); *People v. Lewis*, 91 P.3d 928, 937 (Cal. 2004), *cert. denied*, 543 U.S. 1178 (2005); *Crump v. State*, 654 So.2d 545, 548 (Fla. 1995) (per curiam).

efficiently correct the limited error. Because of these substantial differences, *Skipper* does not control Berget's argument.[10]

[¶32.] The Supreme Court has not determined, in *Skipper* or otherwise, that a capital defendant has a categorical constitutional right to introduce new mitigation evidence discovered after a sentencing hearing in which the defendant was given the opportunity to present all mitigation evidence he desired. It has also not determined whether a remand for a *limited* resentencing in a capital case that effectively excludes such newly discovered mitigation evidence is constitutionally invalid. On both issues, lower courts have attempted to fill that void. Berget and the State each rely on different authorities reflecting a split in opinion.

[¶33.] Berget contends *Davis v. Coyle* (*Davis V*), 475 F.3d 761 (6th Cir. 2007), provides persuasive authority. On an appeal of a denial of a petition for writ of habeas corpus, Davis sought to challenge his Ohio death sentence. The Ohio Supreme Court had affirmed Davis's convictions but vacated his death sentence because, as with *Berget I*, the sentencing authority (a three-judge panel) may have considered improper aggravating factors in its sentence. *Id.* at 763. The sentencing court, on remand for "a new sentencing trial" as instructed by the appellate court, considered only the record of the trial and first sentencing proceeding. The court refused to consider Davis's motion to withdraw his jury waiver and to introduce new mitigation testimony concerning his post-prison behavior and updated psychological profile. *Id.* at 769. The Ohio Court of Appeals affirmed the court's resentencing,

---

10. On a petition for rehearing in response to this Court's opinion on direct appeal, Berget offered this same argument, citing *Skipper*, to cast doubt on the propriety of this Court's limited remand. Thus, we have had two occasions to analyze this argument.

finding that "it is basic law that a reversal and remand to the trial court for further proceedings has the effect of reinstating the cause in the trial court *in status quo ante*." *Id.* at 770 (quoting *State v. Davis* (*Davis III*), No. CA89-09-123, 1990 WL 165137, \*2 (Ohio Ct. App. Oct. 29, 1990)). The appeals court further noted that because the error requiring remand "'occurred at the deliberative state of the proceedings, *after* the evidence had been submitted to the court,'" the sentencing court need not consider additional evidence. *Id.* The Ohio Supreme Court affirmed on slightly different grounds, finding that unlike *Skipper*, Davis had the opportunity to present all then-available mitigation evidence at his first sentencing trial and was therefore not denied the "individual consideration of relevant mitigating factors" that was the crux of *Skipper*, *Eddings*, and *Lockett*. *Id.* (quoting *State v. Davis* (*Davis IV*), 584 N.E.2d 1192, 1195 (Ohio 1992)). Moreover, the Court found that *Skipper* only applied to mitigation evidence of a good prison record between a defendant's arrest and trial, and not to post-trial prison behavior. *Id.* at 772 (citing *Davis IV*, 584 N.E.2d at 1195).

[¶34.]     The Sixth Circuit rejected this collected reasoning. The court primarily drew comparisons between Davis's case on resentencing and *Skipper* at sentencing—both prosecutors introduced evidence or argument of defendants' dangerousness behind bars and both defendants faced "future dangerousness" as the "central" aggravating factors in their sentences. *Compare Skipper*, 476 U.S. at 2, 3, 106 S. Ct. at 1670, *with Davis V*, 475 F.3d at 771-72. The court determined that the only way to distinguish the two cases was that *Skipper* involved sentencing and Davis's case involved resentencing. *See id.* at 773. The court found that to be an unreasonable basis for denying the application of *Skipper* to Davis's case. *Id.*

The *Davis* court also concluded that the Ninth and Eleventh Circuits already supported the application of *Skipper* to resentencing.[11] Accordingly, the court found that only a new, full resentencing hearing could permit the proper weighing of the improperly excluded new mitigation testimony. *Id.* at 774-75.

[¶35.]     The State, in contrast, cites the Ohio Supreme Court case of *State v. Roberts*, 998 N.E.2d 1100 (Ohio 2013), *cert. denied*, ___ U.S. ___, 134 S. Ct. 1554 (2014). In *Roberts*, on direct appeal, the Court affirmed Roberts's convictions of aggravated murder and both aggravated circumstances therein, but remanded for limited resentencing because the trial judge engaged in ex parte communications with the prosecutor in drafting the sentencing opinion. *Id.* at 1104. The Court

---

11.    Only one Ninth Circuit case cited in *Davis V* actually addresses whether new mitigation evidence, constitutionally speaking, must be admitted at resentencing after the defendant was given the opportunity to present all mitigation evidence at his original sentencing. *See* 475 F.3d at 782 (Gibbons, Cir. J., concurring) (noting only one case was so "on point"). That case is *Creech v. Arave*, 947 F.2d 873, 881-82 (9th Cir. 1991), *overruled on other grounds*, 507 U.S. 463, 113 S. Ct. 1534, 123 L. Ed. 2d 188 (1996). *Creech* based its finding that *Lockett*, *Eddings*, and *Skipper* "required that a defendant be allowed to offer such mitigating evidence at resentencing" on the Idaho Supreme Court's ruling in *Sivak v. State*, 731 P.2d 192, 197 (Idaho 1986). The Ninth Circuit justified its ruling by stating, "Like the Idaho Supreme Court, we see no rational basis for distinguishing the evidence of a defendant's good conduct while awaiting trial and sentencing, and evidence of a defendant's good conduct pending review of a death sentence which is vacated on appeal." *Creech*, 947 F.2d at 881-82 (internal citations omitted). The Idaho Supreme Court's logic was that if the mitigating relevance of a capital defendant's prison behavior is to show "his probable future conduct at the penitentiary, and hence, the appropriateness of the death penalty as opposed to a life sentence[,]" then there is no qualitative difference between pre-sentence and post-sentence prison conduct for mitigation purposes. *Sivak*, 731 P.2d at 197-98. If anything, according to the Idaho Supreme Court, defendant's behavior in jail awaiting sentencing may be a less reliable indicator of future conduct in the penitentiary than defendant's actual conduct at the penitentiary post-sentence, making this new post-sentence mitigation evidence more reliable. *Id.*

specified on remand that Roberts had a right to allocute and that the trial court was to reweigh the evidence and "personally prepare an entirely new penalty opinion." *Id.* On remand, Roberts filed a motion to introduce new mitigation evidence, including prison records, a disability claim file, an affidavit from Roberts's psychologist offering a preliminary diagnosis, and a letter about Roberts from her son. *Id.* at 1104-05. That motion was denied. *Id.* at 1105. The trial court heard Roberts's allocution and sentenced her to death.

[¶36.]     On appeal, the Court rejected Roberts's assertion that the sentencing court erred in precluding her from presenting new mitigating evidence on remand. The Court distinguished *Skipper*, *Lockett*, and *Eddings* as inapplicable because those cases "involved a situation where the capital sentencer was prohibited, in some form or another, from considering relevant mitigating evidence at trial. . . . [N]o relevant mitigating evidence was ever excluded from consideration during [Roberts's] penalty phase.'" *Id.* at 1107 (first two alterations in original) (quoting *State v. Chinn*, 709 N.E.2d 1166, 1180-81 (Ohio 1999)). "In other words, neither *Lockett* nor any of its progeny required the trial court to reopen the evidence after an error-free evidentiary hearing had already taken place." *Id.* at 1108 (citing *Chinn*, 709 N.E.2d at 1180-81). Instead, the error in question occurred after the evidentiary sentencing proceeding had closed; therefore, "the trial court was *required* to proceed on remand from the point at which the error occurred[.]" *Id.* at 1110 (quoting *Chinn*, 709 N.E.2d at 1181). Otherwise, the Court would create an unauthorized "right to *update* one's mitigation. Such a right has no clear basis in *Lockett* or its progeny." *Id.* at 1108.

[¶37.]     Beyond an inability to reconcile *Lockett*, *Eddings*, and *Skipper* to this alleged right to update one's mitigation evidence, the Court rejected Roberts's argument as causing untenable results.  The Court reasoned that:

> Establishing a right to update mitigation could result in arbitrary distinctions between similarly situated capital defendants.  A defendant who had an error-free mitigation hearing could not update his mitigation—no matter how compelling the new mitigation that might be available to him— if the trial judge committed no error *after* the mitigation hearing that called for the case to be remanded.  But another defendant, whose mitigation hearing was equally free of error, *would* have the right to update his mitigation in the event that a posthearing sentencing error took place that required a remand.

*Id.*

[¶38.]     Both *Davis V* and *Roberts* provide reasoning for whether or not Supreme Court precedent gives indirect authority that a court, on limited resentencing, must consider new mitigation evidence.  Two key factors, however, point to *Roberts* being the persuasive authority.

[¶39.]     First, the Sixth Circuit based its decision in *Davis V* on the salient aggravating circumstance shared in both *Davis* and *Skipper*.  "[T]he core of the analysis in *Skipper* reflects the Court's understanding that the right of a defendant to present evidence of good behavior in prison is particularly relevant when a prediction of future dangerousness figures *centrally* in a prosecutor's plea for imposition of the death penalty."  *Davis V*, 475 F.3d at 771 (emphasis added).  "Although there could conceivably be some question about the relevance of such evidence in the abstract, the record in this case establishes without doubt that [the newly discovered evidence on remand] was highly relevant *to the single aggravating factor relied upon by the state*—that future dangerousness should keep Davis on

death row." *Id.* at 773 (emphasis added). Therefore, according to the court, *Skipper* was substantively distinguishable from Davis's situation "solely on the basis of timing," and it applied *Skipper* to require a full resentencing. *See id.*

[¶40.]    In contrast, the two statutory aggravating circumstances under which the court sentenced Berget to death did not relate to his future dangerousness per se, but to the nature of the murder he committed. *See* SDCL 23A-27A-1(7), (8) ("[t]he offense was committed against a[n] . . . employee of a corrections institution," and "[t]he offense was committed by a person in . . . the lawful custody of . . . a place of lawful confinement"). These statutory aggravating circumstances do not include future dangerousness as a consideration. Moreover, the circuit court considered Berget's future dangerousness as one among four other non-statutory aggravating circumstances. The court's original and amended presentence hearing verdicts indicate the court also took into account: (1) the violent nature of Berget's attack on Johnson, (2) that a life sentence would have no deterrent effect on other inmates similarly situated to Berget, (3) that Berget had a long criminal history of ever-increasing violence outside of prison, and (4) that Berget showed a lack of remorse to Johnson's family. Berget's future dangerousness undoubtedly played a role in the court's penalty analysis, but that aggravating concern did not predominate as it did in *Davis* or *Skipper*. Since this "central role" is the basis of the Sixth Circuit's reasoning in *Davis V*, Berget's reliance on that case is questionable.

[¶41.]    Second, and most importantly, however, the negative consequences of adopting Berget's position, as noted in *Roberts*, make *Roberts* the persuasive authority. For instance, as noted above, under SDCL 23A-27A-12(2) we are statutorily charged with an independent determination of "whether the evidence

supports . . . [a] judge's finding of a statutory aggravating circumstance as enumerated in § 23A-27A-1." Because of this duty, were we to accept Berget's rationale that *Skipper* and *Davis V* require consideration of newly discovered post-trial mitigation evidence in every capital case, this Court would open the door to becoming the initial trier of fact for evidence never presented or considered by the circuit court. Under Berget's rationale, this Court, when presented with new post-trial evidence upon appeal, "could be considered a 'sentencer' for *Lockett* purposes." *See Roberts*, 998 N.E.2d at 1108-09. This, again, would thwart the judicial economy of our tiered judicial system. *See Piper III*, 2014 S.D. 2, ¶ 10, 842 N.W.2d at 343. It would also no longer make the original sentencing proceeding the "main event" but improperly relegate it to a mere "tryout on the road." *See Gregory v. Solem*, 449 N.W.2d 827, 833 (S.D. 1989) (citing *Wainwright v. Sykes*, 433 U.S. 72, 90, 97 S. Ct. 2497, 2508, 53 L. Ed. 2d 594, 610 (1977)).

[¶42.] Additionally, the *Roberts* Court's finding of arbitrary discrepancies that may manifest between similarly situated capital defendants simply because of a post-sentence error in deliberation is clearly applicable in this case. No sentencing error existed in the case of Berget's co-defendant, Eric Robert. *See State v. Robert*, 2012 S.D. 60, 820 N.W.2d 136. Had Robert proceeded with his case and tried to raise a similar argument of post-sentencing discovery of evidence he deemed to be mitigating, under the rationale now advanced by Berget, Berget could obtain a second sentencing hearing while Robert could not. Therefore, the circumstances of their offenses and the individual "character and propensities" of each defendant— the fundamental concerns of sentencing, *see Gregg*, 428 U.S. at 189, 96 S. Ct. at 2932 (citations omitted)—would not result in their distinct sentencing treatments;

they would result from a potential, extraneous court error that occurred after sentencing. That strikes at the heart of *Lockett's* holding that the death penalty should be imposed "in a more consistent and rational manner[,]" based on an analysis of the fundamental concerns of sentencing. *See Lockett*, 438 U.S. at 601, 605, 98 S. Ct. at 2963, 2965.

[¶43.]     It is that very interest in achieving a "more rational and equitable administration of the death penalty" that the Supreme Court found to be the basis for allowing states the "authority to set reasonable limits upon the evidence a defendant can submit, and to control the manner in which it is submitted[,]" including mitigation evidence, in capital cases. *See Oregon v. Guzek*, 546 U.S. 517, 526, 126 S. Ct. 1226, 1232, 163 L. Ed. 2d 1112 (2006). A reasonable limit is one that we impose today that avoids the arbitrary outcomes and judicial inefficiency noted in *Roberts* and reinforces an appellate court's authority to instruct a limited remand.

[¶44.]     The Supreme Court's ruling in *Guzek* is also instructive in a broader sense. In *Guzek*, the issue relevant to this case was whether the Eighth and Fourteenth Amendments granted Guzek the right to introduce new evidence of his innocence at his sentencing hearing—namely, that he was not present at the scene of the crime. *Id.* at 523, 126 S. Ct. at 1230. The Court rejected the Oregon Supreme Court's broadening of *Lockett* to provide an Eighth Amendment right for Guzek to introduce newly discovered evidence of his innocence at a sentencing hearing. *Id.* at 523, 126 S. Ct. at 1230-31. The Court grounded its ruling on three conclusions. First, the Court noted that, fundamentally, "evidentiary concerns" are different between guilt and sentencing phases, with the former concern asking *whether* the

defendant committed the crime and the latter asking *how* the act was committed. *Id.* at 526, 126 S. Ct. at 1232. Second, the Court found that "the parties previously litigated the issue to which the evidence is relevant—whether the defendant committed the basic crime. The evidence thereby attacks a previously determined matter in a proceeding at which, in principle, that matter is not at issue. The law typically discourages collateral attacks of this kind." *Id.* (citing *Allen v. McCurry*, 449 U.S. 90, 94, 101 S. Ct. 411, 415, 66 L. Ed. 2d 308 (1980)). Third, the Court determined that any "negative impact of a rule restricting defendant's ability to introduce *new* alibi evidence is minimized by the fact that Oregon law gives the defendant the right to present to the sentencing jury *all* the evidence of innocence from the original trial regardless."[12] *Id.* at 526-27, 126 S. Ct. at 1233 (citing Or. Rev. Stat. § 138.012(2)(b) (2003)). The Court summarized its analysis by holding, "The legitimacy of these trial management and evidentiary considerations" and the "minimally adverse impact the restriction would have" on defendant's ability to present his case indicated the Eighth Amendment was not violated. *Id.* at 527, 126 S. Ct. at 1233.

---

12. This language is analogous to the Ohio Supreme Court's logic in *Roberts*, where it held:

> This case . . . involves a proceeding on remand for the limited purpose of correcting an error that occurred *after* the defendant had had a *full, unlimited opportunity* to present mitigating evidence to the sentencer.
> In other words, neither *Lockett* nor any of its progeny required the trial court to reopen the evidence after an error-free evidentiary hearing had already taken place.

998 N.E.2d at 1108 (second emphasis added).

#26764

[¶45.]     Our balancing in this case and the balancing conducted by the

Supreme Court in *Guzek* to reject a broadening of *Lockett* are similar because both

defendants' arguments implicated the same court management interest.  Berget

seeking a new sentencing hearing by effectively invoking a "right to update one's

mitigation" is akin to Guzek seeking to treat the sentencing hearing as a second

guilt trial by invoking a "right to reconsideration" of guilt at sentencing.  *See Guzek*,

546 U.S. at 525, 126 S. Ct. at 1232 (citations omitted).  If the Court were to adopt

Berget's position, the Court would establish the incentive to turn a limited

resentencing into a full-fledged, second sentencing hearing by seeking out all newly

discoverable mitigation evidence conceivable, again no longer making the original

sentencing proceeding the "main event" but consigning it to a mere "tryout on the

road."  *See Gregory*, 449 N.W.2d at 833 (citation omitted).  It is also more than

conceivable that Berget may claim new, positive relationships with family members,

fellow prisoners, or strangers for the remainder of his life if this Court permits each

assertion of a relationship to be grounds for a new sentencing hearing or grounds

for ignoring our limited remand instructions.

[¶46.]     Accordingly, *Lockett*, *Eddings*, and *Skipper* are clearly distinguishable

from the present case.  No binding authority requires under the Eighth Amendment

that a resentencing authority consider newly discovered, otherwise-admissible

mitigation evidence, when the defendant had a full and unrestricted opportunity to

present mitigation evidence at the initial sentencing.  Given the negative

consequences articulated above, *Guzek* supports our instructions in *Berget I*.  *See*

*Guzek*, 546 U.S. at 526, 126 S. Ct. at 1232.  These negative consequences include

the lack of finality, the arbitrariness that a right to update his mitigation would

inject into death penalty jurisprudence, and the destruction of the appellate two-tiered judicial system and the competencies it fosters. Therefore, we follow *Roberts*, 998 N.E.2d at 1108-09, and decline to follow *Davis V*, 475 F.3d at 773, *Creech*, 947 F.2d at 881-82, and *Sivak*, 731 P.2d at 197-98. Preventing these discrepancies and dysfunctions clearly is a rational basis for excluding newly discovered mitigation evidence from the limited remand for resentencing in this case. Because Berget is unable to present persuasive authority supporting his position, he has failed to meet his onerous burden of proving beyond a reasonable doubt that this Court's statutory and state constitutional authority to order limited remand violated the Eighth and Fourteenth Amendments in this case. Accordingly, the circuit court did not commit legal error and abuse its discretion in following this Court's instruction on resentencing.[13]

---

13. Berget's constitutional claim is also subject to prejudicial or harmless error analysis. *See St. John*, 2011 S.D. 58, ¶ 10, 804 N.W.2d at 74 (quoting *Novak v. McEldowney*, 2002 S.D. 162, ¶ 7, 655 N.W.2d 909, 912) ("'An evidentiary ruling will not be overturned unless error is demonstrated and shown to be prejudicial error.'"); *Smith*, 1999 S.D. 83, ¶ 39, 599 N.W.2d at 353; *see also* 18 U.S.C. § 3595(c)(2)(C) ("The court of appeals shall not reverse or vacate a sentence of death on account of any error which can be harmless, including any erroneous special finding of an aggravating factor, where the Government establishes beyond a reasonable doubt that the error was harmless."); SDCL 23A-44-14 ("Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded."); *Sweet v. Delo*, 125 F.3d 1144, 1158-59 (8th Cir. 1997) (citing *Hitchcock v. Dugger*, 481 U.S. 393, 399, 107 S. Ct. 1821, 1824-25, 95 L. Ed. 2d 347, and *Skipper*, 476 U.S. at 7-8, 106 S. Ct. at 1672-73) (applying harmless error analysis to a *Lockett* error)); *State v. Piper* (*Piper I*), 2006 S.D. 1, ¶ 18, 709 N.W.2d 783, 794-95 (applying a prejudicial error analysis to a capital proceeding). "'A constitutional violation may constitute harmless error, and thus not require reversal, if the court can declare beyond a reasonable doubt that the error was harmless and did not contribute to the verdict obtained.'" *State v. Larson*, 512 N.W.2d 732, 735 (S.D. 1994) (quoting *State v. Schuster*, 502 N.W.2d 565, 570-71 (S.D. 1993)). *See also Chapman v. California*, 386 U.S.

(continued . . .)

#26764

---

18, 22, 24, 87 S. Ct. 824, 827, 828, 17 L. Ed. 2d 705 (1967) (articulating the similar federal standard). This harmless error analysis is particularly salient where, as here, there is "ample evidence relating to the circumstances of the murder." *See State v. Rhines* (*Rhines I*), 1996 S.D. 55, ¶ 101, 548 N.W.2d 415, 441. The State has the burden to prove harmless error. *State v. Medicine Eagle*, 2013 S.D. 60, ¶ 60, 835 N.W.2d 886, 905 (citing *State v. Nelson*, 1998 S.D. 124, ¶ 8, 587 N.W.2d 439, 443).

The State has proven that the aggravating evidence against Berget is overwhelming beyond a reasonable doubt, thereby negating any claim of constitutional error. Out of all the remaining aggravating evidence— including the brutal nature of the beating and suffocation of Ronald Johnson in carrying out the attempted escape, Berget's violent criminal history, and the clear existence of the statutory aggravating circumstances of the killing an employee of a corrections institution while Berget was lawfully confined, SDCL 23A-27A-1(7), (8)—none of it would have been called into doubt or otherwise eroded by Berget's evidence of his relationship with his son and his family. This new evidence could not reasonably expunge or mitigate the circumstances of the murder. "The absence of any prejudice is particularly apparent given the horrific nature of the crime." *McGehee v. Norris*, 588 F.3d 1185, 1189 (8th Cir. 2009) (citation omitted) (applying harmless error analysis to an alleged *Lockett* error). Additionally, as noted above, future dangerousness was not the central concern of the sentencing authority. It is even unclear how Berget's relationship with his family will logically affect his future dangerousness. It is also unclear how Berget's relationship would have resulted in a life sentence given the circuit court's awareness of Berget's son and the testimony of Associate Warden Pontow that Berget could serve a life sentence in administrative segregation to "diminish any serious threat of future dangerousness." *See Hall v. Luebbers*, 341 F.3d 706, 717 (8th Cir. 2003) (deeming the exclusion of mitigating evidence in a capital case harmless error where it was cumulative).

Moreover, it is important to note that "South Dakota law does not require the weighing of aggravating circumstances against mitigating factors[,]" and that a sentencing authority, in the face of all manner of mitigating evidence, "need only find one statutory aggravating factor beyond a reasonable doubt to impose the death penalty." *Page*, 2006 S.D. 2, ¶ 50, 709 N.W.2d at 758-59 (citing *Rhines II*, 2000 S.D. 19, ¶¶ 39 n.9, 53, 608 N.W.2d at 312 n.9, 314).

Therefore, "ample evidence" shows the exclusion of Berget's relationship with his son in the resentencing authority's final consideration was a harmless error beyond a reasonable doubt, if it was error at all. Because the circuit court committed no prejudicial error, it did not abuse its discretion in excluding this newly discovered evidence, and on these additional grounds,

(continued . . .)

#26764

[¶47.]     **2.     Whether the circuit court's resentencing procedure met statutory and constitutional requirements concerning Berget's presence at components of the sentencing process and allocution.**

[¶48.]     If the Court's limited resentencing instructions pass constitutional muster, Berget argues that the circuit court nevertheless erred by not having granted him other rights available at sentencing generally—his rights to be physically present in the courtroom and to allocute once more before resentencing. These issues are questions of law and are therefore subject to de novo review. *See Pete Lien & Sons, Inc. v. City of Pierre*, 1998 S.D. 38, ¶ 5, 577 N.W.2d 330, 331 (per curiam).

[¶49.]               **a.     The legality of the circuit court's entry of its sentence.**

[¶50.]     In support of this argument, Berget interprets a number of diverse authorities from federal and state sources. Berget cites Article VI, § 7 of the South Dakota Constitution, which provides, in pertinent part, that "[i]n all criminal prosecutions the accused shall have the right to defend in person and by counsel; . . . to meet the witnesses against him face to face . . . ." He goes on to reference SDCL 23A-39-1, which defines this right further by mandating that "[a] defendant shall be present at his arraignment, at the time of his plea, at every stage of his trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as provided by §§ 23A-39-2 and 23A-39-3." Because these last exceptions are not applicable, and because a defendant's presence is

---

(. . . continued)
    Berget's constitutional argument fails. *See Smith*, 1999 S.D. 83, ¶ 39, 599 N.W.2d at 353.

required "at every stage of his trial," up to and including "the return of the verdict," Berget contends his state constitutional rights were violated by his absence when the court reimposed its sentence. Berget argues that federal authority is also persuasive on this issue because he believes that SDCL chapter 23A-39 was modeled after Rule 43 of the Federal Rules of Criminal Procedure. *Cf. Jacquot v. Rozum*, 2010 S.D. 84, ¶ 15, 790 N.W.2d 498, 503 ("This Court routinely looks to other courts' decisions for analytical assistance in interpreting a South Dakota rule of civil procedure that is equivalent to a Federal Rule of Civil Procedure.").

[¶51.] On this last point, Berget is incorrect. The federal rule and SDCL chapter 23A-39, while containing some similarities, also contain numerous differences of significance. For example, SDCL 23A-39-3 deals with appearances by corporations faced with criminal prosecutions, a subject not addressed by the federal rule. The source of SDCL 23A-39 traces its roots back to our earliest criminal code while still a Territory. *See* Dakota Rev. Code Crim. P. §§ 237, 294 (1877). The current version was enacted as part of the general revision of our Criminal Code in 1978, again with significant differences from the federal rule both in subject matter and in phraseology. *See* 1978 S.D. Sess. Laws ch. 178, § 485. Therefore, the persuasive authority of federal courts' interpretations of Federal Rule 43 language is negligible.

[¶52.] For case law interpreting SDCL 23A-39-1, Berget cites *Kost v. State*, 344 N.W.2d 83 (S.D. 1983).[14] In that case, Kost brought a second petition for

---

14. *Kost* also does not reference Federal Rule 43. Rather, it reviews our previous case law, which goes back to 1904, and which interpreted Territorial criminal

(continued . . .)

habeas corpus after having been found guilty by a jury of first-degree manslaughter and sentenced to life imprisonment. *Id.* at 84. The sole issue was whether the trial court denied Kost's due process rights when Kost was not present at three discussions in chambers, even though his attorney waived his right to be present each time. *Id.* at 84. This Court began its discussion by noting that a criminal defendant's right to be present flows from state statutory and constitutional authority, as well as the Sixth Amendment to the United States Constitution. *Id.* (citations omitted). The scope of that due process right "requires the defendant 'to be present in his own person whenever his presence has a relation, reasonably substantial, to the fulness [sic] of his opportunity to defend against the charge.'" *Id.* (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-06, 54 S. Ct. 330, 332, 78 L. Ed. 674, 678 (1934), *overruled on other grounds by Malloy v. Hogan*, 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964)). *See also Kentucky v. Stincer*, 482 U.S. 730, 745, 107 S. Ct. 2658, 2667, 96 L. Ed. 2d 631 (1987) (holding that the right to be present is "not guaranteed when presence would be useless, or the benefit but a shadow"). Accordingly, this Court determined that the constitutional and statutory right, conditioned on *Snyder*, required that "[a] defendant must be present when his presence is related to an opportunity to defend himself against the criminal charge." *Kost*, 344 N.W.2d at 86. This Court equated any other failure to be present, even though it may violate the plain language of the statute, to be harmless error. *Id.* at

---

(. . . continued)
     procedure. *Kost*, 344 N.W.2d at 85 (quoting *State v. Swenson*, 18 S.D. 196, 204-05, 99 N.W. 1114, 1116 (1904)).

85-86 (citing *State v. Rosales*, 302 N.W.2d 804, 807 (S.D. 1981)). The circuit court's judgment was affirmed based on this harmless error analysis. *Id.* at 86.

[¶53.] Applying a similar analysis, Berget's physical presence at resentencing would have been "useless, or the benefit but a shadow" given our remand instructions. The circuit court's resentencing did not, and could not, depend on any new evidence from Berget outside of calling Dr. Bean, which Berget declined to do when offered by the circuit court. What remained was for the circuit court to exercise its discretion in rendering its judgment on the same evidence and argument that was presented at the initial sentencing hearing. Because of the unique nature of the alleged error in *Berget I*, the circuit court only needed to reconsider its findings of fact and conclusions of law by drafting amendments in chambers, filing them with the Clerk of Courts, and serving copies on counsel. The unique posture of the remand begs the question: what was to be gained by having Berget physically present to watch the circuit court deliberate and hand these documents to the clerk? *See United States v. Burton*, 543 F.3d 950, 953 (7th Cir. 2008) ("A criminal defendant has no right to be present in the judge's chambers when she writes her sentencing memorandum or files it with the clerk."). Because our instructions in *Berget I* so limited the jurisdiction of the circuit court on remand and Berget had no right to be present in chambers while the circuit court deliberated in reconsidering its sentence without reference to the Dr. Bean admission, the circuit court committed no error in filing new sentencing findings and conclusions outside Berget's presence.

[¶54.] In spite of the distinction between our rules and the federal standard, Berget argues that at least one court (federal) has categorically found due process

objections to the absence of a defendant at resentencing, citing *United States v. Arrous*, 320 F.3d 355, 359 (2d Cir. 2003). *Arrous*, however, engaged in the very same harmless error analysis articulated above to find the defendant's involuntary absence harmless. *Id.* at 361-62. In explaining its holding further, the Second Circuit Court of Appeals stated that "defendant's presence would have made no difference in the second sentencing. The decision whether to strike the restitution order from the judgment or allow Arrous to withdraw his guilty plea was one that rested solely within the discretion of the district court and did not depend on any input from defendant." *Id.* at 362.[15] Likewise, in drafting Berget's resentencing, the circuit court was required to consider the identical, preexisting evidence that Berget and the State presented at the initial sentencing, including Berget's prior allocution and arguments of counsel. Again, the circuit court's resentencing based upon our limited remand did not, and could not, depend on any new evidence from Berget outside of calling Dr. Bean, which Berget declined to do. What remained was for the circuit court to exercise its discretion in rendering its judgment on the

---

15. Berget cites another Second Circuit case, *United States v. DeMott*, 513 F.3d 55 (2d Cir. 2008) (per curiam), for the proposition that it is per se prejudicial (and not harmless) error for a court to impose a sentence on a defendant when not in the defendant's presence. Berget quotes language in *DeMott* that appears to support this claim: "Since a new sentence was imposed out of the presence of the defendant, his lawyer, and the prosecutor, we cannot confidently decide there has been no harm." *See id.* at 58. However, Berget leaves out much of the court's analysis, including its citation to *Arrous* and its harmless error analysis. *Id.* (citing *Arrous*, 320 F.3d at 361) ("The denial of this right is subject to harmless review, but such error is harmless only where it is 'unimportant and insignificant' in the context of the case, such as where . . . 'defendant's presence would not have affected the outcome.'"). The *DeMott* court simply found that defendant's presence at resentencing in that case would have affected the outcome, *see id.*, thereby distinguishing it from *Arrous* and, per the analysis above, Berget's resentencing.

same evidence and argument that was presented at the initial sentencing hearing. Berget is therefore left without any substantive grounds for asserting he was prejudiced by his physical absence when the circuit court deliberated, filed the sentencing documents with the clerk of courts, and mailed copies to counsel. Accordingly, any error regarding Berget's physical absence was harmless beyond a reasonable doubt and did not contribute to the verdict obtained. *See Larson*, 512 N.W.2d at 735.

[¶55.] **b.** **Berget's claim for additional allocution.**

[¶56.] Similarly, Berget contends that state and federal authority support his right to allocute before resentencing, which was denied by the circuit court's refusal to conduct a formal resentencing hearing. To advance this contention, he relies on SDCL 23A-27-1 and this Court's ruling in *State v. Garber*, 2004 S.D. 2, 674 N.W.2d 320. The relevant language of SDCL 23A-27-1 is as follows:

> Before imposing a sentence, a court may order a hearing in mitigation or aggravation of punishment. . . . At such hearing, the court shall allow the defense counsel an opportunity to speak on behalf of the defendant and shall address the defendant personally and ask him if he wishes to make a statement in his own behalf and to present any information in mitigation of punishment.

*Id.* On its face, this language describes the allocution right as arising out of a sentencing hearing ordered by the court. As noted above, the circuit court did not order a new sentencing hearing because it correctly found no basis for it on remand. Berget's right to allocute was not infringed at his original sentencing hearing, the only sentencing hearing on the record. The plain language of the statute, therefore, does not support Berget's claim. Moreover, the only relevance of *Garber* to this analysis is that it referenced in passing that SDCL 23A-27-1 provides a "right of

allocution" and nothing more. *See* 2004 S.D. 2, ¶ 18, 674 N.W.2d at 325. Without further interpretation, SDCL 23A-27-1 does not explicitly govern the type of *limited* resentencing at issue here, nor does it describe the nature of the allocution right. South Dakota case law appears to be silent in both respects.

[¶57.]    Berget contends this Court may draw authority from federal case law that purportedly establishes a defendant's right to allocute at resentencing generally. Federal case law provides that unlike the right to be present, "the right of allocution is not a constitutional one. Rather, the right of allocution derives from the Federal Rules of Criminal Procedure." *United States v. Patterson*, 128 F.3d 1259, 1260 (8th Cir. 1997) (per curiam) (citations omitted). It has also been described as a common law right that relates to a defendant's constitutional right to be present at sentencing. *See Green v. United States*, 365 U.S. 301, 304, 81 S. Ct. 653, 655, 5 L. Ed. 2d 670 (1961).

[¶58.]    Berget relies on the unpublished opinion of *United States v. Blake* (*Blake II*), No. 12-3176, 501 F. App'x 587, 588 (7th Cir. Feb. 26, 2013), for the proposition that allocution is also a right provided at limited resentencing. Leading up to the case, the Seventh Circuit had entered a limited remand for resentencing in light of *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), and its repeal of the mandatory nature of the Federal Sentencing Guidelines. *See Blake II*, 501 F. App'x at 588. The trial court then resentenced Blake, but did not notify him of his ability to speak in his defense. *Id.* On appeal from the remand, the Seventh Circuit entered a four-sentence unpublished opinion that remanded Blake's case for failure to allow allocution. *See United States v. Blake* (*Blake I*), No. 06-3390, 227 F. App'x 506, 2007 WL 1875958 (7th Cir. June 11,

2007). Both cases give little support for Berget's argument. *Blake I* explicitly stated only the court's uncertainty whether the denial of Blake's right of allocution in that particular circumstance was harmless error. *Id.* at *1. *Blake II* merely referenced back to *Blake I*. *See Blake II*, 501 F. App'x at 588.

[¶59.] In contrast, the Ninth Circuit, in its published opinion in *United States v. Silva*, 472 F.3d 683 (9th Cir. 2007), directly addressed a defendant's right to allocute on limited remand. As with *Blake*, the Ninth Circuit in *Silva* had issued a limited remand for resentencing Silva in the wake of *Booker*. *Id.* at 685. This limited remand "require[d] the district court to make a subjective determination, based upon a review of the record and the submissions of counsel, as to whether the sentence would have been materially different under advisory Guidelines." *Id.* The court noted that because the court properly "evaluated the record, considered the views of counsel, and concluded that he would have chosen the same sentence under a discretionary regime[,]" Silva had "no right . . . even to be present during such a limited inquiry, and so by necessary implication . . . [authority] does not support a right to allocute therein." *Id.* at 686. While the court acknowledged the federal rulemaking and case law authority establishing allocution as a general, necessary component of a criminal defendant's due process rights, *see id.* at 686-87, it further noted, "[W]e have decided that allocution is not always necessary in the case of sentencing error." *Id.* at 687. The court illustrated the limits of the allocution right by harkening to its earlier opinion in *United States v. Knows His Gun*, 438 F.3d 913 (9th Cir. 2006). In *Knows His Gun*, the Ninth Circuit affirmed a sentence where the trial court, on remand in light of *Booker*, failed to permit allocution. *Id.* at 920. Recounted later in *Silva*, the Ninth Circuit noted that the key factor was Knows His

Gun's ability at his original sentencing to present all relevant evidence and to allocute. *See Silva*, 472 F.3d at 687 (citing *Knows His Gun*, 438 F.3d at 919-20) ("We affirmed . . . because the defendant had already had a chance to present non-Guidelines evidence at the original sentencing and needed no further right to allocute."). The court then applied that rationale to Silva, and held that because the limited remand "merely requires review of the record and the views of counsel, due process does not require allocution." *Id.* at 687-88.

[¶60.]     The clear parallels between Berget's case and *Silva* indicate that the due process afforded to Berget on limited remand did not implicate Berget's right to allocution. Like the Ninth Circuit's directive in *Silva*, we instructed on remand that the circuit court was to conduct its review "on the existing record." *See Berget I*, 2013 S.D. 1, ¶ 120, 826 N.W.2d at 37. Akin to *Silva*, we effectively tasked the lower court with making "a subjective determination, based upon a review of the record and the submissions of counsel, as to whether [Berget's] sentence would have been [] different" absent the improper consideration. *See Silva*, 472 F.3d at 685. The circuit court then appropriately considered only the existing record, including the prior allocution, and the views of counsel in making its decision. The circuit court was not required to grant additional allocution because Berget was already given a chance to submit all relevant evidence and to allocute at his sentencing hearing. *Silva* provides that no due process right to allocute exists within the limited remand framework we instructed in *Berget I* given the similarities of our instructions. This, coupled with SDCL 23A-27-1's plain language does not support Berget's interpretation. Berget offers no persuasive authority on which to base his allocution right.

[¶61.] Further, even if there were a right of allocution in this instance, any failure of the circuit court to provide Berget this right was harmless error. *See United States v. Robertson*, 537 F.3d 859, 863 & n.3 (8th Cir. 2008) (applying harmless error analysis to an allocution error). Recognizing the similar nature of the right to be present and the right to allocute (albeit the allocution right involves a lesser, common law concern), *see Silva*, 472 F.3d at 686, a similar harmless error framework may be applied. This Court's instruction on remand narrowed the circuit court's consideration of new mitigating evidence. By this instruction, Berget's ability to re-allocute, after electing not to introduce Dr. Bean's testimony, became immaterial. With the removal of Dr. Bean's report from consideration, the evidence upon which Berget could allocute was the same evidence upon which he allocuted at the initial sentencing hearing. Nothing changed. And because the resentencing court indicated it would consider his prior allocution, Berget could not have influenced the circuit court's resentencing decision when all the court had to consider was the preexisting record. *Cf. Kost*, 344 N.W.2d at 86 ("[Defendant's] absence from these discussions was not error because his presence was not necessary to defend against the charges."). As noted above, the language of SDCL 23A-37-1 does not provide a right of allocution at this limited resentencing, and even if it did, the resulting error at Berget's resentencing would be harmless beyond a reasonable doubt because it could not, and would not, contribute to the sentence rendered. *See Larson*, 512 N.W.2d at 735.

[¶62.] Therefore, Berget provides no persuasive authority to support a right to allocution in the limited remand proceedings directed by *Berget I*. If the court

erred in not providing for allocution, that error was harmless. Accordingly, his claim fails.

[¶63.]    **3.    Whether the circuit court erred in not recusing itself prior to resentencing.**

[¶64.]    Berget asserts the circuit court erred by denying his request that the court recuse itself on limited remand, citing the court's actual and implied judicial bias. This argument stems from Berget's allegation that the court simply recycled its findings of fact and conclusions of law from those in the case of Berget's co-defendant, Eric Robert. In his initial brief, Berget characterized this allegation as indicating the court gave his case little consideration, which in turn evidenced bias. Berget now modifies this argument in his reply brief and in oral argument by asserting that the court was "trying to be fair in a situation where no mortal could be." Berget further explains that the court was more inherently—rather than intentionally—biased because it had to prejudge Berget's case, having already sentenced his co-defendant on similar findings of fact and conclusions of law. Berget relates that for the court to change its findings from Robert's case to Berget's case would be to "call the finality of the [*Robert*] decision . . . into question."

[¶65.]    Berget admits that SDCL 15-12-24 statutorily precluded his affidavit for change of judge because he submitted argument to the circuit court—admitting guilt and receiving sentence—prior to filing the affidavit. He bases the court's duty to recuse on a superseding, general constitutional right to a fair trial, citing *Nelson*, 1998 S.D. 124, ¶ 14, 587 N.W.2d at 445 (citations omitted) (outlining the scope of a right to a fair trial), and *Page*, 2006 S.D. 2, ¶ 14, 709 N.W.2d at 749 (quoting *State v. Hoadley*, 2002 S.D. 109, ¶ 32, 651 N.W.2d 249, 257) ("[A] defendant's 'opportunity

to disqualify a judge is statutory, . . . and not a constitutional right, except as it may be implicit in a right to a fair trial.'").

[¶66.]     This argument fails. Berget had argued on direct appeal that similarities between the verdicts from his and Robert's pre-sentencing hearing indicate a violation of Berget's right to an individualized sentencing determination under *Lockett. Berget I*, 2013 S.D. 1, ¶¶ 53-54, 826 N.W.2d at 18-19. This Court rejected that argument. We did so based on our finding that "Berget has not 'presented any evidence to constitute a legitimate basis on which to call into question the circuit judge's impartiality. . . . Absent such a showing that a fair judgment was impossible, it was not error for the circuit judge to sentence [Berget] after sentencing his co-defendant [Robert].'" *Id.* ¶ 54, 826 N.W.2d at 18 (quoting *Page*, 2006 S.D. 2, ¶ 17, 709 N.W. 2d at 751).[16] This finding echoed our prior holdings in *Page*, 2006 S.D. 2, ¶¶ 15-17, 709 N.W.2d at 750-51, and *Hoadley*, 2002 S.D. 109, ¶¶ 32-34, 651 N.W.2d at 257-58, that the mere fact the circuit court previously sentenced a co-defendant to death does not show the judicial bias, or the "deep-seated favoritism or antagonism," that overrides the presumption against recusal that the court was impartial. Berget's attempt to distinguish this case from *Page* and *Hoadley* fails. To accept Berget's argument would prohibit the trying of co-defendants by the same judge in all cases as a matter of law. Berget offers no

---

16.    Rather, we explained that the similarity in the presentence verdicts' recitation of facts was the logical and proper result of a court approaching a joint murder by co-defendants. *Id.* ¶ 52. Here, that analysis also applies with equal effect to Berget's argument on the court's amended findings of fact and conclusions of law.

legitimate indication of the court's bias to modify our prior analysis. This argument therefore fails.

[¶67.] **4.** **Whether Berget's sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor.**

[¶68.] Our analysis of the record indicates no basis for finding Berget's sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor. *See* SDCL 23A-27A-12(1). The circuit court's amended presentence hearing verdict and amended findings of fact and conclusions of law reflect the proper scope of analysis directed by this Court on limited remand. As indicated above, Berget's assertion of circuit court bias, actual and inherent, was shown to have no merit on direct appeal and remains without merit. *Berget I*, 2013 S.D. 1, ¶ 54, 826 N.W.2d at 18-19. No improper considerations indicating passion, prejudice, or arbitrariness were otherwise evident on direct appeal. *Id.* ¶ 13, 826 N.W.2d at 11. That continues to be the case here.

[¶69.] **5.** **Whether the evidence supports the circuit court's finding of statutory aggravating circumstances as enumerated in SDCL 23A-27A-1.**

[¶70.] We noted in *Berget I* that evidence introduced at Berget's sentencing hearing supported, beyond a reasonable doubt, the circuit court's finding of two statutory aggravating circumstances evident in Ronald Johnson's murder. *See id.* ¶¶ 16-17, 826 N.W.2d at 11; *see also* SDCL 23A-27A-1(7) ("The offense was committed against a law enforcement officer, employee of a corrections institution, or firefighter while engaged in the performance of such person's official duties[.]"); 23A-27A-1(8) ("The offense was committed by a person in, or who has escaped from, the lawful custody of a law enforcement officer or place of lawful confinement[.]").

Since then, Berget has brought forth no evidence or argument to question those holdings. Further inquiry is therefore unnecessary. The evidence supports the circuit court's finding of the two statutory aggravating circumstances.

[¶71.] **6. Whether Berget's death sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.**

[¶72.] Finally, because "[w]e strictly and purposely limited our remand instructions in [*Berget I*] to correct the specific error that had occurred," *see Piper III*, 2014 S.D. 2, ¶ 12, 842 N.W.2d at 343, and because Berget acknowledges without objection that all proportionality concerns raised in *Berget I* were addressed and affirmed by our opinion, our prior proportionality analysis stands, *see Berget I*, 2013 S.D. 1, ¶¶ 18-31, 826 N.W.2d at 11-14. The record continues to provide no basis for this Court to find Berget's death sentence to be excessive or disproportionate. In the absence of the Court's instruction, the aggravating circumstances of Berget's crime and the remaining aggravating factors would nevertheless outweigh any reasonable implications of Berget's new relationship—no matter how positive—with his son and his son's family. We conclude that our prior proportionality analysis remains valid and Berget's death sentence is not excessive or disproportionate in relation to similar cases where the death penalty was imposed.

## Conclusion

[¶73.] This Court, pursuant to the South Dakota Constitution, possesses the clear authority to direct the jurisdictional scope of a limited remand to the circuit court, and our remand directions in *Berget I* did not infringe upon any of Berget's constitutional rights. The limited remand also did not implicate or otherwise violate Berget's rights to be present and to allocution. Finally, this Court previously

rejected, in *Berget I*, Berget's judicial bias argument, and he has provided no additional, substantive argument in that regard on this appeal. We therefore affirm his death sentence.

[¶74.] ZINTER and SEVERSON, Justices, and MILLER, Retired Justice, concur.

[¶75.] KONENKAMP, Justice, dissents.

[¶76.] MILLER, Retired Justice, sitting for WILBUR, Justice, disqualified.

KONENKAMP, Justice (dissenting on Issue 1).

[¶77.] When a death sentence is reversed and remanded for resentencing, and the sentencing court is thus required to determine anew whether to impose a sentence of life or death, there is no rational basis to deny the defendant the opportunity to present for the court's deliberation any newly available mitigation evidence. It makes no difference here whether our remand was limited. The sentencing court was ordered to "conduct a sentencing without" the error in the previous sentencing, and therefore, it had to reevaluate all the appropriate factors and evidence, absent the erroneously considered matter. Federal constitutional law and our own jurisprudence require that the sentencing court consider any new mitigation evidence.

## I.

[¶78.] Death is the ultimate penalty. It cannot be undone. It is thus an "'indispensable part of the process of inflicting the penalty of death'" that the sentencing process "permit the consideration of the 'character and record of the individual offender and the circumstances of the particular offense[.]'" *Lockett v.*

*Ohio*, 438 U.S. 586, 601, 98 S. Ct. 2954, 2963, 57 L. Ed. 2d 973 (1978) (quoting *Woodson v. North Carolina*, 428 U.S. 280, 304, 96 S. Ct. 2978, 2991, 49 L. Ed. 2d 944 (1976)); *Skipper v. South Carolina*, 476 U.S. 1, 4, 106 S. Ct. 1669, 1670-71, 90 L. Ed. 2d 1 (1986).  Yet, after today's decision, courts will be required to ignore any current mitigation evidence in deciding life or death if that court is resentencing an offender because of an error in the previous sentencing process.  This limitation "creates the risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty[,]" a risk "unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments."  *See Lockett,* 438 U.S. at 605, 98 S. Ct. at 2965.  Our Court ignores the fundamental tenets of the Eighth Amendment in holding, as a matter of law, that a defendant sentenced to death has no right to present newly discovered, otherwise admissible, mitigating evidence when resentenced, because that defendant had an opportunity to present mitigation evidence at the original sentencing hearing.

[¶79.]        A right to mitigate one's sentence in a capital case is not merely a statutory right, but a constitutional guarantee.  *Id.* at 608, 98 S. Ct. at 2967.  Contrary to the Court's claim, *Lockett, Eddings,* and *Skipper* are not clearly distinguishable; nor is this case akin to *Roberts,* 998 N.E.2d at 1108 or *Guzek,* 546 U.S. 517, 126 S. Ct. 1226.[17]  This case directly implicates the precept that in order

---

17.    Despite this Court's claim, *Guzek* is not "instructive in a broader sense."  *See supra* Majority Opinion ¶ 44.  *Guzek* ruled that a defendant is not entitled to present new evidence of his *innocence* during a *sentencing* hearing because the guilt and sentencing phases are different, the issue of guilt had already been litigated, and trial management and evidentiary considerations control.  546 U.S. at 526-27, 126 S. Ct. at 1232-33.  Here, however, Berget's attempt to introduce new *mitigation* evidence at sentencing in no way implicates the

(continued . . .)

to decide "a matter so grave as the determination of whether a human life should be taken or spared," *see Gregg,* 428 U.S. at 189, 96 S. Ct. at 2932 (citing *Furman,* 408 U.S. 238, 92 S. Ct. 276), "the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering*, as a mitigating factor*, any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *See Lockett*, 438 U.S. at 604, 98 S. Ct. at 2964-65.

[¶80.]     Other courts have likewise held that the holding in *Skipper,* 476 U.S. at 8, 106 S. Ct. at 1672-73, that a defendant should be allowed to present any available mitigating evidence requires that, at resentencing, a court must consider any new evidence that the defendant has developed since the initial sentencing hearing. *See, e.g., Davis v. Coyle*, 475 F.3d 761, 771 (6th Cir. 2007); *Robinson v. Moore,* 300 F.3d 1320, 1345-48 (11th Cir. 2002); *Smith v. Stewart,* 189 F.3d 1004, 1008-14 (9th Cir. 1999); *Spaziano v. Singletary,* 36 F.3d 1028, 1032-35 (11th Cir. 1994); *Alderman v. Zant,* 22 F.3d 1541, 1556-57 (11th Cir. 1994); *Creech v. Arave,*

---

(. . . continued)
guilt phase and does not involve an issue already litigated (his sentence was vacated). Moreover, there is no comparable concern for trial management and evidentiary consideration. On the contrary, before resentencing a defendant, the court *must* consider the character and history of the defendant before it. Considering newly discovered, otherwise admissible, mitigation evidence fulfills that duty. Because *Guzek* specifically involved the difference between the *guilt* and *sentencing* phases and in no way addressed what evidence is admissible when a defendant is resentenced, *Guzek* bears no instructive value here.

947 F.2d 873, 881 (9th Cir. 1991), *rev'd on other grounds by Arave v. Creech*, 507 U.S. 463, 113 S. Ct. 1534, 123 L. Ed. 2d 188 (1993); *Sivak,* 731 P.2d at 197-98.[18]

## II.

[¶81.]　　　Our own precedent also dictates that it is error not to consider Berget's newly available, otherwise admissible, mitigation evidence.  In *Bult IV*, this Court made clear that a sentencing court has the duty to "acquaint itself thoroughly 'with the character and history of the man before it,'" and a failure to do so denies a defendant "a meaningful sentencing hearing in accordance with our statutes and general principals of due process."  1996 S.D. 20, ¶¶ 8, 13, 544 N.W.2d at 216-17 (quoting *State v. Pack*, 516 N.W.2d 665, 667 (S.D. 1994)).  We reversed Bult's sentence specifically because the sentencing court failed to consider Bult's *current* mitigation evidence, despite the fact that Bult had an error-free original sentencing hearing ten years earlier.  *See id.* ¶ 14.

[¶82.]　　　In 1983, Bult had been sentenced to life without the possibility of parole, a sentence originally affirmed and later reversed.  *State v. Bult* (*Bult I*), 351 N.W.2d 731 (S.D. 1984); *Bult v. Leapley* (*Bult II*), 507 N.W.2d 325, 328 (S.D. 1993).  After Bult's first resentencing hearing, during which the court held a full evidentiary hearing, the sentencing court again sentenced Bult to life without the possibility of parole.  *Bult III*, 529 N.W.2d at 199.  On appeal for the third time, we reversed the sentence and "remand[ed] again for resentencing, with instructions

18.　　The Court's concern here about the "negative consequences" of allowing newly available mitigation evidence at resentencing was adequately answered by the Idaho Supreme Court in *Sivak*: "Needless to say, a sentencing judge will not have to consider such post-sentence mitigation evidence as will be submitted in this case if [the judge] conducts a proper sentencing procedure in the first place."  *Id*. at 198 n.3.

that the sentencing court shall impose an appropriate term of years." *Id.* at 200.

We did not specifically instruct the court to conduct a full sentencing hearing. *Id.*

Yet, when, on remand, the sentencing court did not hold a new evidentiary hearing

and sentenced Bult to 300 years, Bult appealed asserting that his 300-year sentence

constituted cruel and unusual punishment and that he was denied a meaningful

sentencing hearing. *Bult IV*, 1996 S.D. 20, ¶¶ 6-7, 544 N.W.2d at 216.

[¶83.]      On appeal, we held that a sentencing court had an "obligation," on

remand for resentencing, to update itself on what actions the defendant had taken

between the reversal of the court's resentence and the court's second rehearing to

pronounce a new sentence. *Id.* ¶ 12. We did not rely on the "nature of the error," or

language from *Bult III* that "permitted a full sentencing hearing on remand[.]" *See*

*supra* Majority Opinion n.9. We also did not express concern for maintaining

"judicial efficiency" and avoiding "arbitrary outcomes." Rather, we focused on the

sentencing court's *duty* to thoroughly acquaint itself with the *current* character and

history of the defendant before it.

### III.

[¶84.]      "Sentencing decisions are perhaps the most difficult responsibility for

trial judges, encompassing circumstances both obvious and elusive." *State v.*

*Bonner*, 1998 S.D. 30, ¶ 11, 577 N.W.2d 575, 578. The task becomes even more

difficult when we declare, as a matter of law, that trial courts must cull out previous

portions of their deliberations on resentencing, but cannot consider current

mitigation that may bear on the question of life or death. Because resentencing

requires courts to reevaluate and reweigh the factors that went into their initial

decision, they should also consider any new evidence that the defendant has

developed since the initial sentencing hearing. Doing otherwise infringes on Eighth Amendment protections and violates our own established jurisprudence.

[¶85.] Berget's sentence should be remanded for a new sentencing hearing. This result is the only one consistent with our precedent and "ensure[s] the reliability, under Eighth Amendment standards, of the determination that 'death is the appropriate punishment in a specific case.'" *See Lockett*, 438 U.S. at 601, 98 S. Ct. at 2963 (quoting *Woodson*, 428 U.S. at 305, 96 S. Ct. at 2991).